Electronically Filed
Kahalah A. Clay
Circuit Clerk
Ashley Doughty
21L1112
St. Clair County
11/12/2021 12:00 AM
15570240

## IN THE CIRCUIT COURT OF ST. CLAIR COUNTY
## STATE OF ILLINOIS

TERRI L. COLEMAN-NAPPER, )
as Special Administrator and Administrator )
of the Estate of TOSHORN D. NAPPER, )
JR. (deceased) and individually, )
                                    )      Cause No.: 21L1112
           Plaintiff, )
                                    )      Div.:
v. )
                                    )
CKEM, INC. d/b/a TINY'S PUB & )
GRILL, )
                                    )
Serve:  Registered Agent Donald J. Voelker )
        602 N. Main )
        Columbia, IL 62236 )
and )
                                      )
GOODTYMES DUPO, LLC, d/b/a )
GOOD TIMES SALOON, )
                                    )
Serve:  Registered Agent )
        St. Clair, Gilbreth & Steppig, LLC )
        252 Southwoods Ctr. #558 )
        Columbia, IL 62236 )
and )
                                      )
DONALD J. VOELKER, )
                                      )
Serve:  Donald J. Voelker )
        602 N. Main Street )
        Columbia, IL 62236 )
                                      )
and )
                                      )
MARK PACKER, )
                                      )
Serve: Mark Packer )
        2847 Schrader Dr. )
        Waterloo, IL 62298 )
                                      )
and )
                                      )

1

PATROLMAN CAMERON CLEVELAND,)
                                 )

Serve:  Cameron Cleveland        )
         100 N Second St.       )
         Dupo, IL 62239        )
                                 )

and                             )

SGT. JASON COOPER,           )

Serve:  Jason Cooper            )
         100 N Second St.       )
         Dupo, IL 62239        )

and

TWO OR MORE UNIDENTIFIED EAST )
CARONDELET POLICE OFFICERS,   )

Serve:  East Carondelet Police Department )
         950 State St.
         East Carondelet, IL 62240

and

THE VILLAGE OF DUPO, ILLINOIS,

Serve:  Mayor Jerry Wilson
         107 N Second St.
         Dupo, IL 62239

and

FORMER CHIEF KEVIN SMITH,

Serve:  Kevin Smith
         8436 Hunters Fork Loop
         Ruskin, FL 33573

and

THE VILLAGE OF EAST CARONDELET,)
ILLINOIS,

Serve:  Mayor Herb Simmons
         950 State St.
         East Carondelet, IL 62240

and ⟩

CHIEF MICHAEL DENNIS ⟩

Serve: Michael Dennis ⟩
      950 State St. ⟩
      East Carondelet, IL 62240 ⟩

and ⟩

THE CITY OF ALTON, ILLINOIS, ⟩

Serve: Mayor David Goins ⟩
      101 E. 3rd St. ⟩
      Alton, IL 62202 ⟩
and ⟩

CHIEF MARCOS PULIDO, ⟩

Serve: Marcos Pulido ⟩
      1700 E. Broadway, ⟩
      Alton, IL 62202 ⟩
and ⟩

THE VILLAGE OF SAUGET, ILLINOIS, ⟩

Serve: Mayor Richard Sauget, Jr. ⟩
      2897 Falling Springs Rd. ⟩
      Sauget, IL 62206 ⟩

and ⟩

FORMER OFFICER ASHLEY ⟩
ROEVER, ⟩

Serve: Ashley Roever ⟩
      432 Sanders St. ⟩
      Bethalto, IL 62010 ⟩

          Defendants. ⟩

3

## COMPLAINT

COMES NOW Plaintiff, TERRI L. COLEMAN-NAPPER as Special Administrator and Administrator of the Estate of TOSHORN D. NAPPER, JR., by and through her counsel, and for her Complaint against Defendants CKEM, INC. d/b/a TINY'S PUB & GRILL; GOODTYMES DUPO, LLC. d/b/a GOOD TIMES SALOON; DONALD VOELKER; MARK PACKER; PATROLMAN CAMERON CLEVELAND; SGT. JASON COOPER; TWO OR MORE UNIDENTIFED EAST CARONDELET POLICE OFFICERS; THE VILLAGE OF DUPO, ILINOIS; FORMER CHIEF KEVIN SMITH; THE VILLAGE OF EAST CARONDELET, ILLINOIS; CHIEF MICHAEL DENNIS; THE CITY OF ALTON, ILLINOIS; CHIEF MARCOS PULIDO; THE VILLAGE OF SAUGET, ILLINOIS; and FORMER OFFICER ASHLEY ROEVER states to the Court as follows:

### ALLEGATIONS APPLICABLE TO ALL COUNTS

1.     At all times relevant to this Complaint, the Plaintiff, Terri L. Coleman-Napper as Special Administrator and Administrator of the Estate of Toshorn D. Napper, Jr. and individually ("Plaintiff"), was a citizen and resident of St. Clair County, Illinois and is currently a citizen and resident of the City of St. Louis, Missouri.

2.     At all times relevant herein, Toshorn D. Napper, Jr. ("Decedent") was a citizen and resident of St. Clair County, Illinois.

3.     At all times relevant to this Complaint, Defendant CKEM, Inc. d/b/a Tiny's Pub & Grill ("Tiny's"), was a domestic corporation, doing business in Columbia, Monroe County, Illinois.

4.     At all times relevant to this Complaint, the Defendant, Donald Voelker ("Voelker"), was a citizen and resident of Monroe County, Illinois, who owned, operated, and/or managed Tiny's, at which place it gave or sold alcoholic liquors to the public.

4

5.      At all times relevant to this Complaint, Defendant Goodtymes Dupo, LLC. d/b/a Good Times Saloon ("Good Times"), was a domestic corporation, doing business in Dupo, St. Clair County, Illinois.

6.      At all times relevant to this Complaint, the Defendant, Mark Packer ("Packer"), was a citizen and resident of St. Clair County, Illinois who owned, operated, and/or managed Good Times, at which place it gave or sold alcoholic liquors to the public.

7.      At all times relevant to this Complaint, Defendant Patrolman Cameron Cleveland ("Cleveland") was and is a police officer employed by Defendant the Village of Dupo, Illinois. At all times material to this Complaint, Defendant Cleveland acted under the color of the law and in the course and scope of his employment as an agent, servant, and representative of Defendant the Village of Dupo, Illinois. Defendant Cleveland is sued in his individual and official capacities.

8.      At all times relevant to this Complaint, Defendant Sgt. Jason Cooper ("Cooper") was and is a police officer employed by Defendant the Village of Dupo, Illinois. At all times material to this Complaint, Defendant Cooper acted under the color of the law and in the course and scope of his employment as an agent, servant, and representative of Defendant the Village of Dupo, Illinois. Defendant Cooper is sued in his individual and official capacities.

9.      At all times relevant to this Complaint, Defendant Two or More Unidentified East Carondelet Police Officers ("East Carondelet Officers") were police officers employed by Defendant the Village of East Carondelet, Illinois. At all times material to this Complaint, Defendant East Carondelet Officers acted under the color of the law and in the course and scope of their employment as agents, servants, and representatives of Defendant the Village of East Carondelet, Illinois. Defendant East Carondelet Officers are sued in their individual and official capacities.

5

10.     Defendant the Village of Dupo, Illinois ("Dupo") is a governmental entity within the State of Illinois which funds and operates the Dupo Police Department and was at all relevant times the employer of Defendant Cleveland, Defendant Cooper, and Defendant Former Chief Kevin Smith. Defendant Dupo is responsible for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.

11.     At all times relevant to this Complaint, Defendant Former Chief Kevin Smith ("Smith") was a police chief employed by Defendant Dupo. At all times material to this Complaint, Defendant Smith acted under the color of the law and in the course and scope of his employment as an agent, servant, and representative of the Dupo Police Department.

12.     Defendant the Village of East Carondelet, Illinois ("East Carondelet") is a governmental entity within the State of Illinois which funds and operates the East Carondelet Police Department and was at all relevant times the employer of Defendant East Carondelet Officers and Defendant Chief Michael Dennis. Defendant East Carondelet is responsible for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.

13.     At all times relevant to this Complaint, Defendant Chief Michael Dennis ("Dennis") is and was a police chief employed by Defendant East Carondelet. At all times material to this Complaint, Defendant Dennis acted under the color of the law and in the course and scope of his employment as an agent, servant, and representative of the East Carondelet Police Department.

14.     Defendant the City of Alton, Illinois ("Alton") is a governmental entity within the State of Illinois which funds and operates the Alton Police Department and was at all relevant times the employer of Defendant Chief Marcos Pulido and Defendant Roever. Defendant Alton

6

is responsible for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.

15.     At all times relevant to this Complaint, Defendant Marcos Pulido ("Pulido") was a police chief employed by Defendant Alton. At all times material to this Complaint, Defendant Pulido acted under the color of the law and in the course and scope of his employment as an agent, servant, and representative of the Alton Police Department.

16.     At all times relevant to this Complaint, Defendant Former Officer Ashley Roever ("Roever") was a police officer employed by Defendant the City of Alton, Illinois. At all times material to this Complaint, Defendant Roever acted under the color of the law and in the course and scope of her employment as an agent, servant, and representative of Defendant the City of Alton, Illinois. Defendant Roever is sued in her official capacity.

17.     Defendant the Village of Sauget, Illinois ("Sauget") is a governmental entity within the State of Illinois which funds and operates the Sauget Police Department and was at all relevant times the employer of the Sauget police officers who responded to the incident further described in subsequent paragraphs. Defendant Sauget is responsible for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.

18.     On or about November 14, 2020, at approximately 2:05 a.m., while stopped in his vehicle at a railroad crossing on Southbound Illinois Route 3, at or near 3000 Illinois Route 3, in Sauget, Illinois, Decedent was violently struck from behind by a vehicle driven by Defendant Roever ("Collision").

19.     Decedent was killed as a result of the Collision.

20.     Defendant Roever was intoxicated at more than three times the legal limit for operating a motor vehicle at the time of the Collision.

21.　At the time of the Collision, Defendant Roever was an off-duty police officer employed by Defendant Alton.

22.　On or about November 13, 2020, Defendant Roever arrived at Defendant Tiny's in Columbia, Illinois between approximately 8:00 p.m. and 9:00 p.m.

23　At Defendant Tiny's, Defendant Roever consumed numerous alcoholic beverages and became legally intoxicated.

24.　Defendant Roever left Defendant Tiny's between 12:30 a.m. and 1:00 a.m. to drive to Good Times Saloon in Dupo, Illinois.

25.　At approximately 1:10 a.m. on or about November 14, 2020, officers from the Dupo Police Department and/or the East Carondelet Police Department received a call from dispatch indicating a black SUV, matching the description of Defendant Roever's vehicle and license plate number, had been driving erratically, and observers believed she was driving while intoxicated.

26.　The call, initiated by Columbia Police Department dispatch and relayed to St. Clair County CENCOM, included reports of said black SUV nearly colliding with another vehicle head on and failing to maintain a single lane.

27.　At approximately 1:14 a.m., Defendant Cleveland, a Patrolman working for Dupo Police Department and Defendant Dupo, observed a black SUV cross the center line dividing lanes of travel and activated his emergency lights to initiate a traffic stop. Said black SUV was being driven by Defendant Roever.

28.　Defendant Roever pulled over her vehicle near Good Times Saloon and was approached by Defendant Cleveland and/or other police officers ("Traffic Stop").

8

29.     Defendant Roever advised Defendant Cleveland and/or other officers that she had consumed alcoholic beverages and had been texting while driving. She further advised that she was going to meet some friends at Good Times Saloon.

30.     Defendant Cooper and Two or More Unidentified East Carondelet Police Officers also arrived at the scene with Defendant Cleveland (collectively "Defendant Police Officers").

31.     Despite Defendant Roever's admission that she had consumed alcoholic beverages, the Defendant Police Officers from Defendant Dupo and Defendant East Carondelet did not perform any field sobriety tests. Subsequently, the Defendant Police Officers directed a sober bar patron to move Defendant Roever's vehicle to the parking lot of Good Times Saloon.

32.     During Defendant Roever's interaction with Defendant Police Officers, multiple witnesses observed and commented that Defendant Roever was visibly and clearly intoxicated.

33.     The Defendant Police Officers allowed Defendant Roever to leave the Traffic Stop and go into Good Times Saloon.

34.     The Defendant Police Officers then left the scene, without arresting or citing Defendant Roever or ensuring that she would not be driving after leaving Good Times.

35.     At Defendant Good Times, Defendant Roever, who was already legally intoxicated, consumed additional alcoholic beverages.

36.     Defendant Roever left Good Times and drove her vehicle until she collided with Decedent's vehicle at or before 2:05 a.m., causing his death.

37.     Defendant Roever had a blood alcohol level of more than three times the legal limit at the time of the Collision.

38.     Plaintiff's total damages for all Counts herein, exceed the $50,000.00 jurisdiction limit of this Court.

**COUNT I AGAINST DEFENDANTS CKEM, INC. D/B/A TINY'S PUB & GRILL AND DONALD VOELKER – DRAM SHOP**

COMES NOW Plaintiff TERRI L. COLEMAN-NAPPER as Special Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT I of her Complaint against Defendants CKEM, INC. d/b/a TINY'S PUB & GRILL and DONALD VOELKER, states to the Court as follows:

39.     Plaintiff adopts and incorporates paragraphs 1 through 38 above into Count I of her Complaint, as though fully set forth herein.

40.     At all times relevant to this Complaint, Defendant Tiny's owned, operated and/or managed a tavern located at 602 N. Main Street, Columbia, Illinois, at which place it gave or sold alcoholic liquors to the public.

41.     On and before November 14, 2020, Defendant Tiny's in its aforesaid tavern premises, themselves and/or by their duly authorized agents, servants and/or employees, sold and/or gave alcoholic liquor to its patron, Defendant Roever, which was consumed by her and caused her intoxication.

42.     At all times relevant to this Complaint, Defendant Voelker owned, operated and/or managed Tiny's, at which place he gave and/or sold alcoholic liquors to the public.

43.     On and before November 14, 2020, Defendant Voelker, in his aforesaid tavern premises, himself and/or by and through his duly authorized agents, servants and/or employees, sold and/or gave alcoholic liquor to his patron, Defendant Roever, which was consumed by her and caused her intoxication.

44.     At the aforementioned date and time, Defendant Roever was a patron of Tiny's.

10

45.     At the aforementioned date and time, Defendants Tiny's and Voelker through their agents and/or servants, knew that alcoholic intoxicating liquors were being sold and/or given to patrons on Tiny's premises, including to Defendant Roever.

46.     At the aforementioned time and place, Defendants Tiny's and Voelker, by and through their agents and/or servants, knew that the alcoholic intoxicating beverages that it served to Defendant Roever caused her to become intoxicated and exhibit signs of intoxication.

47.     Subsequently, Defendant Roever left Defendant Tiny's tavern and caused the Collision with Decedent, resulting in his death.

48.     At the aforementioned time and place, Defendants Tiny's and Voelker owed a duty to exercise reasonable care in the operation and control of Tiny's premises, as well as in the provision of alcoholic intoxicating beverages to its patrons pursuant to the laws of the State of Illinois and particularly the Liquor Control Act of 1934 (235 ILCS 5/6-21(a)) commonly known as the "Dram Shop Act."

49.     In violation of said duty, Defendants Tiny's and Voelker were guilty of one or more of the following careless and negligent acts and omissions and violations of the Dram Shop Act, in that they:

    a.    Failed to cease serving alcoholic and intoxicating beverages to their patron Defendant Roever once they knew or should have known that said patron was becoming intoxicated to the point of being a danger to the general public, including Decedent;

    b.    Continued to serve alcoholic and intoxicating liquor to Defendant Roever, so that she continued to become intoxicated, after demonstrating herself to be a danger to the general public, including Decedent;

    c.    Continued to serve alcoholic and intoxicating liquor to Defendant Roever, while failing to take reasonable action to protect others such as Decedent from foreseeable damage and personal injury from individuals such as the aforesaid patron or patrons; and

      d.     Continued to serve alcoholic and intoxicating liquor to Defendant Roever and failed to take reasonable affirmative action to protect individuals such as the Decedent from misconduct of when the danger became apparent, and the circumstances were such that it would have put a prudent individuals on notice of the probability of danger, violence and personal injury.

50.     As a direct and proximate cause of one or more of the aforementioned negligent acts, omissions, and violation of the Dram Shop Act, Defendants Tiny's and Voelker contributed to cause the death of Decedent.

51.     That on July 9, 2021, pursuant to Order of the Circuit Court of St. Clair County, Illinois, Plaintiff Terri L. Coleman-Napper was duly appointed Special Administrator of the Estate of Toshorn D. Napper, Jr. (deceased), for the purpose of prosecuting this action.

52.     That Toshorn D. Napper, Jr. (deceased), left surviving, the following: Terri L. Coleman-Napper (Mother), Toshorn Napper, Sr. (Father), Jonté D. Napper (Brother), Unay B. Brown (Sister), TraVeon D. Napper (Brother) and LaDarius J. Napper (Brother) who, as the consequence of said careless and negligent acts and/or omissions of Defendants Tiny's and Voelker, suffered pecuniary injuries including but not limited to society, companionship, felicity, guidance, attention, advice, training, instruction and any and all other elements of loss of consortium. Decedent had no children and had never been married.

WHEREFORE Plaintiff TERRI L. COLEMAN-NAPPER requests that judgment be entered in her favor and against Defendant CKEM, INC. d/b/a TINY'S PUB & GRILL and Defendant DONALD VOELKER for an amount in accordance with the Liquor Control Act of 1934 (235 ILCS 5/6-21(a)) commonly known as the "Dram Shop Act" and 740 ILCS 180/0.1 et. seq., commonly known as the "Wrongful Death Act," plus costs of this lawsuit and for any other relief this Court deems equitable and just.

## COUNT II AGAINST GOODTYMES DUPO, LLC D/B/A GOOD TIMES SALOON – DRAM SHOP

COMES NOW Plaintiff TERRI L. COLEMAN NAPPER as Special Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT II of her Complaint against Defendants GOODTYMES DUPO, LLC. d/b/a GOOD TIMES SALOON and MARK PACKER, states to the Court as follows:

53.     Plaintiff adopts and incorporates paragraphs 1 through 52 above into Count II of her Complaint, as though fully set forth herein.

54.     At all times relevant to this Complaint, Defendant Good Times Saloon owned, operated and/or managed a tavern located at 200 N. Main Street, Dupo, Illinois, at which place it gave and/or sold alcoholic liquors to the public.

55.     On or before November 14, 2020, Defendant Good Times in its aforesaid tavern premises, themselves and/or by their duly authorized agents, servants and/or employees, sold and/or gave alcoholic liquor to its patron, Defendant Roever, which was consumed by her and caused her intoxication.

56.     At all times relevant to this Complaint, Defendant Packer, owned, operated and/or managed Good Times, at which place he gave and/or sold alcoholic liquors to the public.

57.     On or before November 14, 2020, Defendant Packer, in his aforesaid tavern premises, himself and/or by and through his duly authorized agents, servants and/or employees, sold and/or gave alcoholic liquor to his patron, Defendant Roever, which was consumed by her and caused her intoxication.

58.     At the aforementioned date and time, Defendant Roever was a patron of Good Times.

59.     At the aforementioned date and time, Defendants Good Times and Packer, through their agents and/or servants knew that alcoholic intoxicating liquors were being sold and/or given to patrons on Good Times' premises, including to Defendant Roever.

60.     At the aforementioned time and place, Defendants Good Times and Packer, by and through their agents and/or servants, knew that the alcoholic intoxicating beverages that it served to Defendant Roever caused her to become intoxicated and exhibit signs of intoxication.

61.     Subsequently, Defendant Roever left Defendant Good Times tavern and caused the Collision with Decedent, resulting in his death.

62.     At the aforementioned time and place, Defendants Good Times and Packer owed a duty to exercise reasonable care in the operation and control Good Times' premises, as well as in the provision of alcoholic intoxicating beverages to its patrons pursuant to the laws of the State of Illinois and particularly the Liquor Control Act of 1934 (235 ILCS 5/6-21(a)) commonly known as the "Dram Shop Act."

63.     In violation of said duty, Defendants Good Times and Packer were guilty of one or more of the following careless and negligent acts and omissions and violations of the Dram Shop Act, in that they:

   a.     Failed to cease serving alcoholic and intoxicating beverages to their patron Defendant Roever once they knew or should have known that said patron was becoming intoxicated to the point of being a danger to the general public, including Decedent;

   b.     Continued to serve alcoholic and intoxicating liquor to Defendant Roever, so that she continued to become intoxicated, after demonstrating herself to be a danger to the general public, including Decedent;

   c.     Continued to serve alcoholic and intoxicating liquor to Defendant Roever, while failing to take reasonable action to protect others such as Decedent from foreseeable damage and personal injury from individuals such as the aforesaid patron or patrons; and

d.   Continued to serve alcoholic and intoxicating liquor to Defendant Roever and failed to take reasonable affirmative action to protect individuals such as the Decedent from misconduct of when the danger became apparent, and the circumstances were such that it would have put a prudent individuals on notice of the probability of danger, violence and personal injury.

64.   As a direct and proximate cause of one or more of the aforementioned negligent acts, omissions, and violation of the Dram Shop Act, Defendants Good Times and Packer contributed to cause the death of Decedent.

65.   That on July 9, 2021, pursuant to Order of the Circuit Court of St. Clair County, Illinois, Plaintiff Terri L. Coleman-Napper was duly appointed Special Administrator of the Estate of Toshorn D. Napper, Jr. (deceased), for the purpose of prosecuting this action.

66.   That Toshorn D. Napper, Jr. (deceased), left surviving, the following: Terri L. Coleman-Napper (Mother), Toshorn Napper, Sr. (Father), Jonté D. Napper (Brother), Unay B. Brown (Sister), TraVeon D. Napper (Brother) and LaDarius J. Napper (Brother) who as the consequence of said careless and negligent acts and/or omissions of Defendants Good Times and Packer, suffered pecuniary injuries including but not limited to society, companionship, felicity, guidance, attention, advice, training, instruction and any and all other elements of loss of consortium. Decedent had no children and had never been married.

WHEREFORE Plaintiff TERRI L. COLEMAN-NAPPER requests that judgment be entered in her favor and against Defendant GOODTYMES DUPO, LLC. d/b/a GOOD TIMES SALOON and Defendant MARK PACKER for an amount in accordance with the Liquor Control Act of 1934 (235 ILCS 5/6-21(a)) commonly known as the "Dram Shop Act" and 740 ILCS 180/0.1 et. seq., commonly known as the "Wrongful Death Act," plus costs of this lawsuit and for any other relief this Court deems equitable and just.

15

## COUNT III AGAINST DEFENDANT PATROLMAN CAMERON CLEVELAND – WRONGFUL DEATH

COMES NOW Plaintiff TERRI L. COLEMAN-NAPPER as Special Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT III of her Complaint against Defendant PATROLMAN CAMERON CLEVELAND, states to the Court as follows:

67.     Plaintiff adopts and incorporates paragraphs 1 through 66 above into Count III of her Complaint, as though fully set forth herein.

68.     Defendant Cleveland  knew or with the exercise of ordinary care should have known that Defendant Roever was intoxicated and presented a danger to the general public, while driving a vehicle in her intoxicated condition.

69.     At the time of the Traffic Stop, Defendant Cleveland was guilty of one or more of the following careless and negligent acts and omissions, which contributed to cause the death of Decedent:

a.      failing to properly investigate Defendant Roever's intoxicated condition, including but not limited to having her undergo a field sobriety test or mechanical test to determine her blood alcohol level or state of intoxication;

b.      failing to arrest Defendant Roever when he knew, or through the exercise of ordinary care should have known, that she was driving while intoxicated;

c.      failing to impound Defendant Roever's vehicle or otherwise preventing her from driving in her intoxicated condition;

d.      directing another bar patron to move Defendant Roever's vehicle, and thereby assisting her in continuing to drink and become further intoxicated, and to drive while intoxicated in the immediate future;

e.      facilitating Defendant Roever in continuing to drink, become further intoxicated, and drive while intoxicated by allowing her to enter Good Times Saloon to continue drinking;

16

f.    colluding with Defendant Roever and the other Defendant Police Officers to prevent her arrest, facilitate her drinking and further intoxication and eventual drinking and driving despite Defendant Roever's intoxicated condition.

70.    Defendant Cleveland's conduct, acts and omissions at the time of the Traffic Stop were willful and wanton insofar as they constituted conduct that involved either an actual or deliberate intention to harm, or an utter indifference to or conscious disregard for the safety of Decedent and the general public.

71.    As a direct and proximate cause of one or more of the negligent acts, and/or omissions, Defendant Cleveland contributed to cause the death of Decedent.

72.    That on July 9, 2021, pursuant to Order of the Circuit Court of St. Clair County, Illinois, Plaintiff Terri L. Coleman-Napper was duly appointed Special Administrator of the Estate of Toshorn D. Napper, Jr. (deceased), for the purpose of prosecuting this action.

73.    That Toshorn D. Napper, Jr. (deceased), left surviving, the following: Terri L. Coleman-Napper (Mother), Toshorn Napper, Sr. (Father), Jonté D. Napper (Brother), Unay B. Brown (Sister), TraVeon D. Napper (Brother) and LaDarius J. Napper (Brother) who as the consequence of said careless and negligent acts and/or omissions of Defendant Cleveland, suffered pecuniary injuries including but not limited to society, companionship, felicity, guidance, attention, advice, training, instruction and any and all other elements of loss of consortium. Decedent had no children and had never been married.

WHEREFORE Plaintiff TERRI L. COLEMAN-NAPPER requests that judgment be entered in her favor and against the Defendant PATROLMAN CAMERON CLEVELAND for an amount in accordance with 740 ILCS 180/0.1 *et seq.* commonly known as the "Wrongful Death Act" plus costs of this lawsuit and for any other relief this Court deems equitable and just.

17

## COUNT IV AGAINST DEFENDANT SGT. JASON COOPER – WRONGFUL DEATH

COMES NOW, Plaintiff TERRI L. COLEMAN-NAPPER as Special Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT IV of her Complaint against Defendant SGT. JASON COOPER, states to the Court as follows:

74.     Plaintiff adopts and incorporates paragraphs 1 through 73 above into Count IV of her Complaint, as though fully set forth herein.

75.     Defendant Cooper knew or with the exercise of ordinary care should have known that Defendant Roever was intoxicated and presented a danger to the general public, while driving a vehicle in her intoxicated condition.

76.     At the time of the Traffic Stop, Defendant Cooper was guilty of one or more of the following careless and negligent acts and omissions, which contributed to cause the death of Decedent:

a.     failing to properly investigate Defendant Roever's intoxicated condition, including but not limited to having her undergo a field sobriety test or mechanical test to determine her blood alcohol level or state of intoxication;

b.     failing to arrest Defendant Roever when he knew, or through the exercise of ordinary care should have known, that she was driving while intoxicated;

c.     failing to impound Defendant Roever's vehicle or otherwise preventing her from driving in her intoxicated condition;

d.     directing another bar patron to move Defendant Roever's vehicle, and thereby assisting her in continuing to drink and become further intoxicated, and to drive while intoxicated in the immediate future;

e.     facilitating Defendant Roever in continuing to drink, become further intoxicated, and drive while intoxicated by allowing her to enter Good Times Saloon to continue drinking;

f.     colluding with Defendant Roever and the other Defendant Police Officers to prevent her arrest, facilitate her drinking and further intoxication and eventual drinking and driving despite Defendant Roever's intoxicated condition.

18

77.     Defendant Cooper's conduct, acts and omissions at the time of the Traffic Stop were willful and wanton insofar as they constituted conduct that involved either an actual or deliberate intention to harm, or an utter indifference to or conscious disregard for the safety of Decedent and the general public.

78.     As a direct and proximate cause of one or more of the aforementioned negligent acts, and/or omissions, Defendant Cooper contributed to cause the death of Decedent.

79.     That on July 9, 2021, pursuant to Order of the Circuit Court of St. Clair County, Illinois, Plaintiff Terri L. Coleman-Napper was duly appointed Special Administrator of the Estate of Toshorn D. Napper, Jr. (deceased), for the purpose of prosecuting this action.

80.     That Toshorn D. Napper (deceased), left surviving, the following: Terri L. Coleman-Napper (Mother), Toshorn Napper, Sr. (Father), Jonté D. Napper (Brother), Unay B. Brown (Sister), TraVeon D. Napper (Brother) and LaDarius J. Napper (Brother) who as the consequence of said careless and negligent acts and/or omissions of Defendant Cooper, suffered pecuniary injuries including but not limited to society, companionship, felicity, guidance, attention, advice, training, instruction and any and all other elements of loss of consortium. Decedent had no children and had never been married.

WHEREFORE Plaintiff TERRI L. COLEMAN-NAPPER requests that judgment be entered in her favor and against the Defendant SGT. JASON COOPER for an amount in accordance with 740 ILCS 180/0.1 *et seq.* commonly known as the "Wrongful Death Act" plus costs of this lawsuit and for any other relief this Court deems equitable and just.

## COUNT V AGAINST DEFENDANT TWO OR MORE UNIDENTIFIED EAST CARONDELET POLICE OFFICERS – WRONGFUL DEATH

COMES NOW, Plaintiff TERRI L. COLEMAN-NAPPER as Special Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT V of her

Complaint against Defendant TWO OR MORE UNIDENTIFED EAST CARONDELET

POLICE OFFICERS, states to the Court as follows:

81.     Plaintiff adopts and incorporates paragraphs 1 through 80 above into Count V of

her Complaint, as though fully set forth herein.

82.     Defendant East Carondelet Officers knew or with the exercise of ordinary care

should have known that Defendant Roever was intoxicated and presented a danger to the general

public, while driving a vehicle in her intoxicated condition.

83.     At the time of the Traffic Stop, Defendant East Carondelet Officers were guilty of

one or more of the following careless and negligent acts and omissions, which contributed to

cause the death of Decedent:

a.     failing to properly investigate Defendant Roever's intoxicated condition,
including but not limited to having her undergo a field sobriety test or mechanical
test to determine her blood alcohol level or state of intoxication;

b.     failing to arrest Defendant Roever when they knew, or through the exercise of
ordinary care should have known, that she was driving while intoxicated;

c.     failing to impound Defendant Roever's vehicle or otherwise preventing her from
driving in her intoxicated condition;

d.     directing another bar patron to move Defendant Roever's vehicle, and thereby
assisting her in continuing to drink and become further intoxicated, and to drive
while intoxicated in the immediate future;

e.     facilitating Defendant Roever in continuing to drink, become further intoxicated,
and drive while intoxicated by allowing her to enter Good Times Saloon to
continue drinking;

f.     colluding with Defendant Roever and the other Defendant Police Officers to
prevent her arrest, facilitate her drinking and further intoxication and eventual
drinking and driving despite Defendant Roever's intoxicated condition.

84.     Defendant East Carondelet Officers' conduct, acts and omissions at the time of

the Traffic Stop were willful and wanton insofar as they constituted conduct that involved either

an actual or deliberate intention to harm, or an utter indifference to or conscious disregard for the safety of Decedent and the general public.

85.     As a direct and proximate cause of one or more of the aforementioned negligent acts and/or, omissions, Defendant East Carondelet Officers contributed to cause the death of Decedent.

86.     That on July 9, 2021, pursuant to Order of the Circuit Court of St. Clair County, Illinois, Plaintiff Terri L. Coleman-Napper was duly appointed Special Administrator of the Estate of Toshorn D. Napper, Jr. (deceased), for the purpose of prosecuting this action.

87.     That Toshorn D. Napper, Jr. (deceased), left surviving, the following: Terri L. Coleman-Napper (Mother), Toshorn Napper, Sr. (Father), Jonté D. Napper (Brother), Unay B. Brown (Sister), TraVeon D. Napper (Brother) and LaDarius J. Napper (Brother) who as the consequence of said careless and negligent acts and/or omissions of Defendant East Carondelet Officers, suffered pecuniary injuries including but not limited to society, companionship, felicity, guidance, attention, advice, training, instruction and any and all other elements of loss of consortium.  Decedent had no children and had never been married.

WHEREFORE Plaintiff TERRI L. COLEMAN-NAPPER requests that judgment be entered in her favor and against the Defendant TWO OR MORE UNIDENTIFED EAST CARONDELET POLICE OFFICERS for an amount in accordance with 740 ILCS 180/0.1 *et seq.* commonly known as the "Wrongful Death Act" plus costs of this lawsuit and for any other relief this Court deems equitable and just.

### COUNT VI AGAINST DEFENDANT PATROLMAN CAMERON CLEVELAND – VIOLATION OF CIVIL RIGHTS (42 U.S.C § 1983; Fourteenth Amendment)

COMES NOW, Plaintiff TERRI L. COLEMAN-NAPPER as Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT VI of her

Complaint against Defendant PATROLMAN CAMERON CLEVELAND, states to the Court as follows:

88.     Plaintiff adopts and incorporates paragraphs 1 through 87 above into Count VI of her Complaint, as though fully set forth herein.

89.     Defendant Cleveland  knew or with the exercise of ordinary care should have known that Defendant Roever was intoxicated and presented a danger to the general public including Decedent, while driving a vehicle in her intoxicated condition.

90.     At all times material to this Complaint, including but not limited to, the time of the Traffic Stop, Defendant Cleveland was employed as a police officer by Defendant Dupo and acted under the color of law and in the course and scope of his employment as an agent, servant and representative of Defendant Dupo.

91.     At the time of the Traffic Stop, Defendant Cleveland was guilty of one or more of the following careless and negligent acts and omissions, which contributed to cause the death of Decedent:

a.      failing to properly investigate Defendant Roever's intoxicated condition, including but not limited to having her undergo a field sobriety test or mechanical test to determine her blood alcohol level or state of intoxication;

b.      failing to arrest Defendant Roever when he knew, or through the exercise of ordinary care should have known, that she was driving while intoxicated;

c.      failing to impound Defendant Roever's vehicle or otherwise preventing her from driving in her intoxicated condition;

d.      directing another bar patron to move Defendant Roever's vehicle, and thereby assisting her in continuing to drink and become further intoxicated, and to drive while intoxicated in the immediate future;

e.      actively facilitating Defendant Roever in continuing to drink, become further intoxicated, and drive while intoxicated by allowing her to enter Good Times Saloon to continue drinking, facilitating the moving of her vehicle to the parking lot of the bar, and making no reasonable efforts to prevent her from retrieving the keys to her vehicle;

22

f.     colluding with Defendant Roever and the other Defendant Police Officers to prevent her arrest, facilitate her drinking and further intoxication and eventual drinking and driving despite Defendant Roever's intoxicated condition;

g.     communicating to Defendant Roever, either explicitly or implicitly through silence or some other mechanism, that she would not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty, or property of others;

h.     affirmatively creating a more dangerous situation and failing to take reasonable preventative steps or measures to diffuse that danger;

i.     rendering the public and Decedent more vulnerable to a dangerous driver;

j.     knowingly increasing the danger faced by the Public and Decedent;

k.     giving pre-arranged official sanction, explicitly or implicitly, to the illegal activity and its consequences;

l.     failing to arrest Defendant Roever or keep her from driving and actively facilitating moving Defendant Roever's vehicle to a bar where she could become more intoxicated and a greater danger to the public and Decedent;

m.     communicating to Defendant Roever that she could drink alcoholic beverages and operate a motor vehicle while intoxicated without fear of punishment.

92.     As a direct and proximate result of the above-referenced unlawful and malicious acts and omissions, committed by Defendant Cleveland under the color of law and under his authority as a police officer employed by Defendant Dupo, Decedent was killed as a result of the Collision, and deprived of his substantive and procedural right to life, in violation of the Fourteenth Amendment of the United States Constitution.

93.     The Defendant's above-described conduct, acts, and/or omissions constitute a callous and deliberate indifference to Decedent's rights under the Fourteenth Amendment to the United States Constitution and violated 42 U.S.C. § 1983, thus entitling Plaintiff to an award of punitive damages against Defendant.

23

94.     If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff TERRI L. COLEMAN-NAPPER demands actual or compensatory damages against Defendant PATROLMAN CAMERON CLEVELAND, and because this Defendant acted maliciously, wantonly, and/or oppressively, punitive damages against Defendant Cleveland in his individual and official capacities, plus the costs of this action, attorneys' fees, and such other and further relief as this Court deems equitable and just.

### COUNT VII AGAINST DEFENDANT SGT. JASON COOPER – VIOLATION OF CIVIL RIGHTS (42 U.S.C § 1983; Fourteenth Amendment)

COMES NOW, Plaintiff TERRI L. COLEMAN-NAPPER as Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT VII of her Complaint against Defendant SGT. JASON COOPER, states to the Court as follows:

95.     Plaintiff adopts and incorporates paragraphs 1 through 94 above into Count VII of her Complaint, as though fully set forth herein.

96.     Defendant Cooper knew or with the exercise of ordinary care should have known that Defendant Roever was intoxicated and presented a danger to the general public, while driving a vehicle in her intoxicated condition.

97.     At all times material to this Complaint, including but not limited to, the time of the Traffic Stop, Defendant Cooper was employed as a police officer by Defendant Dupo and acted under the color of law and in the course and scope of his employment as an agent, servant and representative of Defendant Dupo.

98.     At the time of the Traffic Stop, Defendant Cooper was guilty of one or more of the following careless and negligent acts and omissions, which contributed to cause the death of Decedent:

a.      failing to properly investigate Defendant Roever's intoxicated condition, including but not limited to having her undergo a field sobriety test or mechanical test to determine her blood alcohol level or state of intoxication;

b.      failing to arrest Defendant Roever when he knew, or through the exercise of ordinary care should have known, that she was driving while intoxicated;

c.      failing to impound Defendant Roever's vehicle or otherwise preventing her from driving in her intoxicated condition;

d.      directing another bar patron to move Defendant Roever's vehicle, and thereby assisting her in continuing to drink and become further intoxicated, and to drive while intoxicated in the immediate future;

e.      actively facilitating Defendant Roever in continuing to drink, become further intoxicated, and drive while intoxicated by allowing her to enter Good Times Saloon to continue drinking, facilitating the moving of her vehicle to the parking lot of the bar, and making no reasonable efforts to prevent her from retrieving the keys to her vehicle;

f.      colluding with Defendant Roever and the other Defendant Police Officers to prevent her arrest, facilitate her drinking and further intoxication and eventual drinking and driving despite Defendant Roever's intoxicated condition;

g.      communicating to Defendant Roever, either explicitly or implicitly through silence or some other mechanism, that she would not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty, or property of others;

h.      affirmatively creating a more dangerous situation and failing to take reasonable preventative steps or measures to diffuse that danger;

i.      rendering the public and Decedent more vulnerable to a dangerous driver;

j.      increasing the danger faced by the Public and Decedent;

k.      giving pre-arranged official sanction, explicitly or implicitly, to the illegal activity and its consequences;

l.      failing to arrest Defendant Roever or keep her from driving and actively facilitating moving Defendant Roever's vehicle to a bar where she could become more intoxicated and a greater danger to the public and Decedent;

m.      communicating to Defendant Roever that she could drink alcoholic beverages and operate a motor vehicle while intoxicated without fear of punishment.

99.     As a direct and proximate result of the above-referenced unlawful and malicious acts and omissions, committed by Defendant Cooper under the color of law and under his authority as a police officer employed by Defendant Dupo, Decedent was killed as a result of the Collision, and deprived of his substantive and procedural right to life, in violation of the Fourteenth Amendment of the United States Constitution.

100.    The Defendant's above-described conduct, acts, and/or omissions constitute a callous and deliberate indifference to Decedent's rights under the Fourteenth Amendment to the United States Constitution and violated 42 U.S.C. § 1983, thus entitling Plaintiff to an award of punitive damages against Defendant.

101.    If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff TERRI L. COLEMAN-NAPPER demands actual or compensatory damages against Defendant SGT. JASON COOPER, and because this Defendant acted maliciously, wantonly, and/or oppressively, punitive damages against Defendant Cooper in his individual and official capacities, plus the costs of this action, attorneys' fees, and such other and further relief as this Court deems equitable and just.

### COUNT VIII AGAINST DEFENDANT TWO OR MORE UNIDENTIFED EAST CARONDELET POLICE OFFICERS – VIOLATION OF CIVIL RIGHTS (42 U.S.C § 1983; Fourteenth Amendment)

COMES NOW, Plaintiff TERRI L. COLEMAN-NAPPER as Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT VIII of her Complaint against Defendant TWO OR MORE UNIDENTIFED EAST CARONDELET POLICE OFFICERS, states to the Court as follows:

102.    Plaintiff adopts and incorporates paragraphs 1 through 101 above into Count VIII of her Complaint, as though fully set forth herein.

103.    Defendant East Carondelet Officers knew or with the exercise of ordinary care should have known that Defendant Roever was intoxicated and presented a danger to the general public, while driving a vehicle in her intoxicated condition.

104.    At all times material to this Complaint, including but not limited to, the time of the Traffic Stop, Defendant East Carondelet Officers were employed as police officers by Defendant East Carondelet and acted under the color of law and in the course and scope of their employment as agents, servants and representatives of Defendant East Carondelet.

105.    At the time of the Traffic Stop, Defendant East Carondelet Officers were guilty of one or more of the following careless and negligent acts and omissions, which contributed to cause the death of Decedent:

a.    failing to properly investigate Defendant Roever's intoxicated condition, including but not limited to having her undergo a field sobriety test or mechanical test to determine her blood alcohol level or state of intoxication;

b.    failing to arrest Defendant Roever when they knew or through the exercise of ordinary care, should have known that she was driving while intoxicated;

c.    failing to impound Defendant Roever's vehicle or otherwise preventing her from driving in her intoxicated condition;

27

d.     directing another bar patron to move Defendant Roever's vehicle, and thereby assisting her in continuing to drink and become further intoxicated, and to drive while intoxicated in the immediate future;

e.     actively facilitating Defendant Roever in continuing to drink, become further intoxicated, and drive while intoxicated by allowing her to enter Good Times Saloon to continue drinking, facilitating the moving of her vehicle to the parking lot of the bar, and making no reasonable efforts to prevent her from retrieving the keys to her vehicle;

f.     colluding with Defendant Roever and the other Defendant Police Officers to prevent her arrest, facilitate her drinking and further intoxication and eventual drinking and driving despite Defendant Roever's intoxicated condition;

g.     communicating to Defendant Roever, either explicitly or implicitly through silence or some other mechanism, that she would not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty, or property of others;

h.     affirmatively creating a more dangerous situation and failing to take reasonable preventative steps or measures to diffuse that danger;

i.     rendering the public and Decedent more vulnerable to a dangerous driver;

j.     increasing the danger faced by the Public and Decedent;

k.     giving pre-arranged official sanction, explicitly or implicitly, to the illegal activity and its consequences;

l.     failing to arrest Defendant Roever or keep her from driving and actively facilitating moving Defendant Roever's vehicle to a bar where she could become more intoxicated and a greater danger to the public and Decedent;

m.     communicating to Defendant Roever that she could drink alcoholic beverages and operate a motor vehicle while intoxicated without fear of punishment.

106.    As a direct and proximate result of the above-referenced unlawful and malicious acts and omissions, committed by Defendant East Carondelet Officers under the color of law and under their authority as police officers employed by Defendant East Carondelet, Decedent was killed as a result of the Collision, and deprived of his substantive and procedural right to life, in violation of the Fourteenth Amendment of the United States Constitution.

107.    The Defendant's above-described conduct, acts, and/or omissions constitute a callous and deliberate indifference to Decedent's rights under the Fourteenth Amendment to the United States Constitution and violated 42 U.S.C. § 1983, thus entitling Plaintiff to an award of punitive damages against Defendant.

108.    If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff TERRI L. COLEMAN-NAPPER demands actual or compensatory damages against Defendant TWO OR MORE UNIDENTIFED EAST CARONDELET POLICE OFFICERS, and because this Defendant acted maliciously, wantonly, and/or oppressively, punitive damages against Defendant East Carondelet Officers in their individual and official capacities, plus the costs of this action, attorneys' fees, and such other and further relief as this Court deems equitable and just.

## COUNT IX AGAINST DEFENDANT THE VILLAGE OF DUPO, ILLINOIS AND DEFENDANT FORMER CHIEF KEVIN SMITH – MONELL DOCTRINE

COMES NOW, Plaintiff TERRI L. COLEMAN-NAPPER as Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT IX of her Complaint against Defendant THE VILLAGE OF DUPO, ILLINOIS and Defendant FORMER CHIEF KEVIN SMITH, states to the Court as follows:

109.    Plaintiff adopts and incorporates paragraphs one through 108 above into Count IX of her Complaint, as though fully set forth herein.

110.    Upon information and belief, Defendants Dupo and Smith were at the time of the Collision vested by state law with the authority to make policy for Defendant Dupo and its police officers regarding investigating suspected drunk drivers, arresting individuals for driving while

29

intoxicated and generally handling traffic stops. Defendants Dupo and Smith were aware of a pattern of police failing to properly enforce the law for fellow police officer suspects. Its supervisory officers were further aware that the City's policies regarding investigating suspected drunk drivers, arresting individuals for driving while intoxicated, protecting the public, such as Decedent, from drunk drivers and generally conducting traffic stops were so inadequate that it was obvious that a failure to correct them would result in a danger to the public, including Decedent and potential Constitutional violations under the Fourteenth Amendment.

111.    Defendants Dupo and Smith were further aware that the failure to correct said policies would result in danger to the general public, including Decedent and the potential violation of individuals' Constitutional rights under the Fourteenth Amendment.

112.    At all times relevant to this Complaint, Defendants Cleveland and Cooper, as police officers employed by Defendant Dupo, were acting under the direction and control of Defendant Dupo and were acting pursuant to official policy, practice or custom of Defendant Dupo.

113.    Acting under the color of law and pursuant to official policy, practice or custom, Defendant Dupo, intentionally, knowingly and recklessly failed to instruct, supervise, control, and discipline, on a continuing basis, Defendants Cleveland and Cooper from otherwise contributing to cause the death of Decedent and violating his rights under the Fourteenth Amendment.

114.    As a direct and proximate result of the above-referenced unlawful and malicious acts and omissions, committed by Defendants Dupo and Smith, Decedent was killed as a result of the Collision, and deprived of his substantive and procedural right to life, in violation of the Fourteenth Amendment of the United States Constitution.

115.    Defendants Dupo and Smith's above-described conduct, acts, and/or omissions constitute a callous and deliberate indifference to Decedent's rights under the Fourteenth Amendment to the United States Constitution and violated 42 U.S.C. § 1983, thus entitling Plaintiff to an award of punitive damages against Defendants.

116.    If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff TERRI L. COLEMAN-NAPPER demands actual or compensatory damages against Defendant THE VILLAGE OF DUPO, ILLINOIS and Defendant CHIEF KEVIN SMITH, and because these Defendants acted maliciously, wantonly, and/or oppressively, punitive damages against Defendants Dupo and Smith, plus the costs of this action, attorneys' fees, and such other and further relief as this Court deems equitable and just.

## COUNT X AGAINST DEFENDANT THE VILLAGE OF EAST CARONDELET, ILLINOIS AND DEFENDANT CHIEF MICHAEL DENNIS – MONELL DOCTRINE

COMES NOW, Plaintiff TERRI L. COLEMAN-NAPPER as Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT X of her Complaint against Defendant THE VILLAGE OF EAST CARONDELET and Defendant CHIEF MICHAEL DENNIS, states to the Court as follows:

117.    Plaintiff adopts and incorporates paragraphs 1 through 116 above into Count X of her Complaint, as though fully set forth herein.

118.    Upon information and belief, Defendants East Carondelet and Dennis were at the time of the Collision, vested by state law with the authority to make policy for Defendant East Carondelet and its police officers regarding investigating suspected drunk drivers, arresting individuals for driving while intoxicated and generally handling traffic stops. Defendants East

Carondelet and Dennis were aware of a pattern of police failing to properly enforce the law for fellow police officer suspects. Its supervisory officers were further aware that the City's policies regarding investigating suspected drunk drivers, arresting individuals for driving while intoxicated, protecting the public, such as Decedent, from drunk drivers and generally conducting traffic stops were so inadequate that it was obvious that a failure to correct them would result in a danger to the public, including Decedent and potential Constitutional violations under the Fourteenth Amendment.

119.    Defendants East Carondelet and Dennis were further aware that the failure to correct said policies would result in danger to the general public, including Decedent and the potential violation of individuals' Constitutional rights under the Fourteenth Amendment.

120.    At all times relevant to this complaint, Defendant East Carondelet Officers, as police officers employed by Defendant East Carondelet, were acting under the direction and control of Defendant East Carondelet and were acting pursuant to official policy, practice or custom of Defendant East Carondelet.

121.    Acting under the color of law and pursuant to official policy, practice or custom, Defendant East Carondelet, intentionally, knowingly and recklessly failed to instruct, supervise, control, and discipline, on a continuing basis, Defendants East Carondelet Officers from otherwise contributing to cause the death of Decedent and violating his rights under the Fourteenth Amendment.

122.    As a direct and proximate result of the above-referenced unlawful and malicious acts and omissions, committed by Defendants East Carondelet and Dennis, Decedent was killed as a result of the Collision, and deprived of his substantive and procedural right to life, in violation of the Fourteenth Amendment of the United States Constitution.

123.    Defendants East Carondelet and Dennis' above-described conduct, acts, and/or omissions constitute a callous and deliberate indifference to Decedent's rights under the Fourteenth Amendment to the United States Constitution and violated 42 U.S.C. § 1983, thus entitling Plaintiff to an award of punitive damages against Defendants.

124.    If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff TERRI L. COLEMAN-NAPPER demands actual or compensatory damages against Defendants East Carondelet and Dennis, and because these Defendants acted maliciously, wantonly, and/or oppressively, punitive damages against Defendants East Carondelet and Dennis, plus the costs of this action, attorneys' fees, and such other and further relief as this Court deems equitable and just.

## COUNT XI AGAINST DEFENDANT FORMER OFFICER ASHLEY ROEVER VIOLATION OF CIVIL RIGHTS (42 U.S.C § 1983; Fourteenth Amendment)

COMES NOW Plaintiff TERRI L. COLEMAN-NAPPER as Administrator of the Estate of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT XI of her Complaint against Defendant FORMER OFFICER ASHLEY ROEVER, states to the Court as follows:

125.    Plaintiff adopts and incorporates paragraphs 1 through 124 above into Count XI of her Complaint, as though fully set forth herein.

126.    Defendant Roever knew or with the exercise of ordinary care should have known that driving while intoxicated presented a danger to the general public including Decedent.

127.    At all times material to this complaint, including but not limited to, the time of the Traffic Stop, Defendant Roever was employed as a police officer by Defendant Alton and acted

33

under the color of law and in the course and scope of her employment as an agent, servant and representative of Defendant Alton.

128.   At the time of the Traffic Stop, Defendant Roever used her official position as an police officer, employed by Defendant Alton, to evade arrest and receive assistance from Defendant Police Officers to continue drinking and to eventually drive while intoxicated.

129.   As a direct and proximate result of the above-referenced unlawful and malicious acts and omissions, committed by Defendant Roever under the color of law and under her authority as a police officer employed by Defendant Alton, Decedent was killed as a result of the Collision, and deprived of his substantive and procedural right to life, in violation of the Fourteenth Amendment of the United States Constitution.

130.   The Defendant's above-described conduct, acts, and/or omissions constitute a callous and deliberate indifference to Decedent's rights under the Fourteenth Amendment to the United States Constitution and violated 42 U.S.C. § 1983, thus entitling Plaintiff to an award of punitive damages against Defendant.

131.   If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff TERRI L. COLEMAN-NAPPER demands actual or compensatory damages against Defendant FORMER OFFICER ASHLEY ROEVER, and because this Defendant acted maliciously, wantonly, and/or oppressively, punitive damages against Defendant Roever in her official capacity, plus the costs of this action, attorneys' fees, and such other and further relief as this Court deems equitable and just.

## **COUNT XII AGAINST DEFENDANT THE CITY OF ALTON, ILLINOIS AND DEFENDANT CHIEF MARCOS PULIDO – MONELL DOCTRINE**

COMES NOW Plaintiff TERRI L. COLEMAN-NAPPER as Administrator of the Estate

of TOSHORN D. NAPPER, JR. by and through her counsel, and for COUNT XII of her

Complaint against Defendant THE CITY OF ALTON, ILLINOIS and Defendant CHIEF

MARCOS PULIDO, states to the Court as follows:

132.    Plaintiff adopts and incorporates paragraphs 1 through 131 above into Count

XI of her Complaint, as though fully set forth herein.

133.    Defendant Roever, acting under the color of state law, as a City of Alton Police

Officer, used her position as a police officer, to conspire with Defendant Police Officers to avoid

arrest or citation, seizure of her vehicle, and to continue drinking, and eventually, to continue

driving while intoxicated.

134.    Upon information and belief, Defendants Alton and Pulido were at the time of the

Collision vested by state law with the authority to make policy for Defendant Alton and its police

officers regarding their conduct and use of authority off duty. Defendants Alton and Pulido were

aware of a pattern of police using their positions as police officers, to commit offenses under the

law, including driving while intoxicated, without fear of arrest or any other consequences. Its

supervisory officers were further aware that it was obvious that a failure to correct the above

described customs would result in a danger to the public, including Decedent and potential

Constitutional violations under the Fourteenth amendment.

135.    Defendants Alton and Pulido were further aware that the failure to correct said

policies would result in danger to the general public, including Decedent and the potential

violation of individuals' Constitutional rights under the Fourteenth Amendment.

136.    At all times relevant to this complaint, Defendant Roever, as a police officer employed by Defendant Alton, was acting under the direction and control of Defendant Alton and was acting pursuant to official policy, practice or custom of Defendant Alton.

137.    Acting under the color of law and pursuant to official policy, practice or custom, Defendant Alton, intentionally, knowingly and recklessly failed to instruct, supervise, control, and discipline, on a continuing basis, Defendant Roever from otherwise contributing to cause the death of Decedent and violating his rights under the Fourteenth Amendment.

138.    As a direct and proximate result of the above-referenced unlawful and malicious acts and omissions, committed by Defendants Alton and Pulido, Decedent was killed as a result of the Collision, and deprived of his substantive and procedural right to life, in violation of the Fourteenth Amendment of the United States Constitution.

139.    Defendants Alton and Pulido's above-described conduct, acts, and/or omissions constitute a callous and deliberate indifference to Decedent's rights under the Fourteenth Amendment to the United States Constitution and violated 42 U.S.C. § 1983, thus entitling Plaintiff to an award of punitive damages against Defendants.

140.    If Plaintiff prevails, Plaintiff is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff TERRI L. COLEMAN-NAPPER demands actual or compensatory damages against Defendant THE CITY OF ALTON, ILLINOIS and Defendant CHIEF MARCOS PULIDO, and because these Defendants acted maliciously, wantonly, and/or oppressively, punitive damages against Defendants Alton and Pulido, plus the costs of this action, attorneys' fees, and such other and further relief as this Court deems equitable and just.

## COUNT XIII AGAINST DEFENDANT VILLAGE OF SAUGET, ILLINOIS – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED")

COMES NOW, Plaintiff TERRI L. COLEMAN-NAPPER as Administrator of the Estate of TOSHORN D. NAPPER, JR. and individually, by and through her counsel, and for COUNT XIII of her Complaint against Defendant THE VILLAGE OF SAUGET, ILLINOIS, states to the Court as follows:

141.     Plaintiff adopts and incorporates paragraphs 1 through 140 above into Count XIII of her Complaint, as though fully set forth herein.

142.     Responding Sauget Police Department officers, acting under the color of the law and in the course and scope of their employment as agents, servants, and representatives of Defendant Sauget, intentionally engaged in extreme and outrageous behavior against Decedent, including, but not limited to, failing to properly ensure Decedent's body was promptly and safely moved from the scene of the Collision, causing Decedent's body to remain exposed to the elements for an excessive period of time. Further, the responding Sauget Police Department officers a failed to employ reasonable methods to locate and notify Decedent's family and next of kin within a reasonable period of time after the Collision.

143.     Defendant Sauget recklessly disregarded the probability that failing to care for and reverently handle Decedent's body would cause emotional distress to Decedent's next of kin.

144.     Defendant Sauget recklessly disregarded the probability that failing to employ reasonable methods to locate and notify Decedent's next of kin within a reasonable time period would cause emotional distress to Decedent's next of kin.

145.     Defendant Sauget's outrageous behavior caused Decedent's next of kin to suffer severe emotional distress, including anxiety, fear, anger, sadness, and depression.

146.     Defendant Sauget is liable for this intentional infliction of emotional distress because it was proximately caused by their actions and/or omissions as set forth above.

WHEREFORE Plaintiff TERRI L. COLEMAN-NAPPER demands compensatory damages against Defendant THE VILLAGE OF SAUGET, ILLINOIS for the above-described conduct, plus the costs of this action, attorneys' fees, and such other and further relief as this Court deems equitable and just.

Respectfully submitted,

KLAR, IZSAK & STENGER LLC

/s/ Allison F. Stenger

ALLISON F. STENGER, #6311401
MICHAEL P. SINGER, #6330451
1505 S. Big Bend Blvd.
St. Louis, MO 63117
(314) 863-1117 Phone
(314)863-1118 Facsimile
astenger@lawsaintlouis.com
msinger@lawsaintlouis.com
Attorneys for Plaintiff

and

CRAIG J. CONCANNON, P.C.

Craig J. Concannon, # 6257034
7911 Forsyth, Suite 300
St. Louis, MO 63105
(314) 421-3329 Phone
(314) 863-5335 Facsimile
cjc@concannonlaw.com
Attorney for Plaintiff

**IN THE CIRCUIT COURT OF ST. CLAIR COUNTY**
**STATE OF ILLINOIS**

| | |
|---|---|
| TERRI L. COLEMAN-NAPPER, )<br>as Special Administrator and Administrator )<br>of the Estate of TOSHORN D. NAPPER, )<br>JR. (deceased) and individually, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CKEM, INC. d/b/a TINY'S PUB & )<br>GRILL, et al. )<br>)<br>Defendants. )<br>)<br>) | Cause No.:<br><br>Div.: |

## AFFIDAVIT OF DAMAGES

COMES NOW Plaintiff TERRI L. COLEMAN-NAPPER as Special Administrator and Administrator of the Estate of TOSHORN D. NAPPER, JR. (deceased) and individually, who hereby presents this affidavit to the Court pursuant to Supreme Court Rule 222(b). Affiant states under the penalties of perjury as provided by §1-109 of the Codes of Civil Procedure, the money damages sought by Plaintiff in the above captioned cause of action does exceed $50,000.00.

STATE OF MISSOURI          )
                                          ) SS.
COUNTY OF *City of St. Louis*

_____
TERRI L. COLEMAN-NAPPER

Subscribed to and sworn before me this 10 day of November, 2021.

_____
NOTARY PUBLIC

SHELBY ROBERTS
My Commission Expires
January 26, 2023
St. Louis County
Commission #19503575

My Commission Expires: 1/26/2023

EXHIBIT