**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**TERRI L. COLEMAN-NAPPER,**
**Individually and as Special Administrator**
**and Administrator of the Estate of**
**Toshorn D. Napper, Jr., Deceased,**

**Plaintiff,**

**v.**

**CKEM, INC., d/b/a Tiny's Pub & Grill,**
***et al.,***

**Defendants.**

Case No. 3:21-CV-1701-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Around 2 a.m. on November 14, 2020, Toshorn Napper, Jr., was stopped at a railroad crossing in Sauget, Illinois, when he was rear-ended and killed by Ashley Roever. Roever, an off-duty police officer for the City of Alton, Illinois, had been drinking for hours at two different bars prior to the collision. After she left the first bar, concerned citizens reported her intoxicated driving, and she was pulled over by an officer in Dupo, Illinois. Unfortunately, however, Roever was allowed to continue drinking and driving. At the time of the collision, her blood alcohol content was more than three times the legal limit.

Terri L. Coleman-Napper, Mr. Napper's mother, filed this lawsuit individually and on behalf of his estate against the bars, police officers, and municipalities involved that evening. Eleven of the 15 Defendants have filed motions to dismiss, which are currently before the Court. For the reasons set forth below, the Court grants the motions in part and denies the motions in part.

## FACTUAL BACKGROUND

The following facts are reflected in Coleman-Napper's Amended Complaint (Doc. 55), and the Court accepts them as true when considering Defendants' motions to dismiss. Between 8 and 9 p.m. on November 13, 2020, Ashley Roever arrived at Tiny's Pub & Grill in Columbia, Illinois, and consumed numerous alcoholic beverages. (*Id.* at ¶ 23). She left Tiny's between 12:30 a.m. and 1 a.m. and drove toward Good Times Saloon in Dupo, Illinois, where she planned to meet friends. (*Id.* at ¶ 25).

Around 1:10 a.m. on November 14, 2020, officers from the Dupo Police Department and/or the East Carondelet Police Department received a call from dispatch indicating a black SUV matching the description of Roever's vehicle and license plate number had been driving erratically, and observers believed the driver was intoxicated. (*Id.* at ¶ 26). Just four minutes later, Defendant Cameron Cleveland, a patrolman with the Dupo Police Department, saw Roever cross the center line dividing the lanes of traffic and pulled her over. (*Id.* at ¶ 28). Roever told Cleveland, who was assisted by Dupo Sergeant Jason Cooper, East Carondelet Chief's Assistant Jerame Simmons, and/or East Carondelet Officer Bryce Dell, that she had consumed alcoholic beverages and that she had been texting while driving. (*Id.* at ¶ 30). She also said she was going to meet friends at Good Times Saloon. (*Id.*). The police officers did not perform any field sobriety tests despite Roever's admission that she had been drinking. (*Id.* at ¶ 32). They then directed a sober bar patron to move Roever's vehicle to the parking lot of Good Times Saloon. (*Id.*). The officers allowed Roever to go into Good Times Saloon without citing her or ensuring she would not be driving after leaving the bar. (*Id.* at ¶ 35). Multiple witnesses observed and commented that Roever was visibly and clearly intoxicated during her interaction with the officers. (*Id.* at ¶ 33).

Roever continued to consume additional alcoholic beverages at Good Times Saloon before leaving in her vehicle. (*Id.* at ¶ 37). At 2:05 a.m., less than an hour after she was pulled over by Officer Cleveland, Roever rear-ended Mr. Napper's vehicle while it was stopped at a railroad crossing, killing him (*Id.*). Roever had a blood alcohol level of more than three times the legal limit at the time of the collision. (*Id.* at ¶ 38).

On November 12, 2021, Coleman-Napper filed a complaint in the Circuit Court of St. Clair County, Illinois. The case was removed to this Court on December 16, 2021 (Doc. 1), and the Amended Complaint was filed on April 21, 2022 (Doc. 55). In the Amended Complaint, Coleman-Napper alleges Dram Shop Act claims under 235 ILCS 5/6-21(a) against CKEM, Inc., d/b/a Tiny's Pub & Grill and its owner Donald Voelker (Count 1), as well as Goodtymes Dupo, LLC, d/b/a Good Times Saloon and its owner Mark Packer (Count 2). She asserts wrongful death claims against Cleveland, Cooper, Simmons, and Dell ("Police Officer Defendants") in their individual capacities, as well civil rights claims under 42 U.S.C. § 1983 and the Fourteenth Amendment against the Police Officer Defendants in both their individual and official capacities (Counts 3-10). As to the municipalities, Coleman-Napper asserts *Monell* claims against the Village of Dupo, Illinois, and its former police chief Kevin Smith, the Village of East Carondelet, Illinois, and its police chief Rodney Stone, and the City of Alton, Illinois, and its police chief Marcos Pulido (Counts 11, 12, 14). She also alleges a claim of intentional infliction of emotional distress against the Village of Sauget, Illinois (Count 15). Finally, Count 13 alleges a civil rights claim under § 1983 and the Fourteenth Amendment against Roever.

On October 17, 2022, the Court dismissed Count 13 and Roever from this action pursuant to the terms of a release executed between Coleman-Napper and Roever's personal

automobile insurer. (Doc. 106). CKEM, Inc., Voelker, Goodtymes Dupo, LLC, and Packer have answered the Complaint. (Docs. 59, 60). The remaining Defendants each have moved to dismiss the counts against them for failure to state a claim.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (internal citations omitted).

## DISCUSSION

### I.   Police Officer Defendants: Cleveland, Cooper, Simmons, and Dell

#### A.   Statute of Limitations

To begin, Defendants Simmons and Dell argue that Coleman-Napper's state law claims against them are barred by a one-year statute of limitations for claims against governmental employees. (Doc. 83). The incident occurred on November 13, 2020, and Coleman-Napper filed her complaint in St. Clair County on November 12, 2021. Simmons

and Dell, however, were not named as parties until the Amended Complaint was filed on April 21, 2022. (Doc. 55). Thus, they argue, Coleman-Napper's state law claims against them are time-barred.

Under Rule 15(c), an amendment to a pleading relates back to the date of the original pleading when: (1) it asserts a claim or defense that arose out of the conduct or occurrence set out in the original pleading, (2) the amendment changes the naming of the party against whom the claim is satisfied, and (3) the party to be brought in by amendment received notice of the action and knew or should have known that the action would be brought against it, but for a mistake concerning the proper party's identity. FED. R. CIV. P. 15(c).

In *Herrera v. Cleveland*, the Seventh Circuit Court of Appeals held that naming a defendant as John Doe, based on a lack of knowledge of the defendant's name, is not a "mistake" within the meaning of Rule 15(c). *Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1414 (2022). The court reasoned that naming a defendant as John Doe is not based on an error, but rather a deliberate choice to name "a fictitious individual in lieu of a real person. . . . That is, the plaintiff names a John Doe defendant knowing full well the factual and legal differences between the nominal defendant and the proper defendant. Such an intentional and informed decision cannot amount to a mistake." *Id.* Furthermore, a plaintiff who names a John Doe defendant is fully aware that he or she lacks adequate information to ascertain the defendant's identity. *Id.* These actions simply do not qualify as "mistakes" under Rule 15(c). *Id.*

Coleman-Napper tries to distinguish *Herrera* because her original complaint named "Two or More Unidentified East Carondelet Police Officers," not John Does, and the Village of East Carondelet was timely served with the complaint. (Doc. 99). This is a distinction

without a difference. The mistake clause of Rule 15(c) does not apply when the plaintiff lacks knowledge of the identity of the proper defendant, and that is what happened here. Coleman-Napper did not make a mistake by naming the unidentified officers as defendants; therefore, her Amended Complaint does not relate back to her original filing under Rule 15(c).

Nevertheless, the Court finds that Coleman-Napper's claims against Simmons and Dell are timely under the doctrine of equitable tolling. "Equitable tolling halts the limitations clock 'when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'" *Id.* at 499 (quoting *Xanthopoulos v. United States Dep't of Lab.*, 991 F.3d 823, 831 (7th Cir. 2021)). "[I]t is the plaintiff's burden to show 'he diligently pursued the claim and some extraordinary circumstances prevented him from filing his complaint within the statute of limitations.'" *Id.* (quoting *Sparre v. United States Dep't of Lab.*, 924 F.3d 398, 402–03 (7th Cir. 2019)). The extraordinary circumstances must be beyond the plaintiff's control. *Mayberry v. Dittmann*, 904 F.3d 525, 529 (7th Cir. 2018).

Here, Coleman-Napper states that counsel for East Carondelet emailed Plaintiff's counsel on December 15, 2021, stating he had been retained to represent the Village of East Carondelet "and its officers." (Doc. 99). But he did not inform Coleman-Napper of Defendants' proper identities until January 25, 2022, when he provided an internal "I-Case Original Report." (*Id.*). The report states at the top: "This document . . . and its contents are not to be disseminated outside your agency." (*Id.*). To Plaintiff's counsel's knowledge, this is the only document that identifies Simmons and Dell by name, meaning counsel had no way to determine their identities until receipt of this report. (*Id.*). Less than two weeks later, Coleman-Napper filed a motion for leave to amend her complaint and name the proper

parties. (*Id.*). Finally, when counsel for Defendants advised Plaintiff's counsel of the officers' identities, he advised in writing that he would accept service for Simmons and Dell. (*Id.*).

Based on these facts, the Court finds that Coleman-Napper diligently pursued her claims, but the identities of the defendants were unavailable to her until defense counsel shared an internal report containing their names. Once she had their names, she promptly moved to amend the complaint. For these reasons, the Court finds that equitable tolling saves Coleman-Napper's state law claims against Simmons and Dell from being time barred.

### B.       Wrongful Death (Counts 3-6)

Under the Illinois Wrongful Death Act, a plaintiff must prove: (1) the defendant owed a duty to the decedent; (2) the defendant breached that duty; (3) the breach of duty proximately caused the decedent's death; and (4) pecuniary damages occurred to persons designated under the Act. *Fountas v. City of Oak Forest*, No. 1:14-CV-03174, 2021 WL 7161208, at *6 (N.D. Ill. Feb. 19, 2021).

Coleman-Napper claims the Defendant Police Officers knew Roever was intoxicated and presented a danger to the general public. Yet, they failed to perform any field sobriety or breathalyzer tests, failed to arrest her, and failed to impound her vehicle or otherwise prevent her from driving. She further alleges that they facilitated Roever in continuing to drink and become further intoxicated by directing a sober bar patron to move her vehicle and allowing her to enter Good Times Saloon. Coleman-Napper asserts the officers' conduct, acts, and omissions were willful and wanton because they involved either an actual or deliberate intention to harm or an utter indifference to or conscious disregard for the safety of Mr. Napper and the public. Finally, as a direct result of these acts and/or omissions, Defendants contributed to cause Mr. Napper's death.

1. *Existence of a Legal Duty*

The Police Officer Defendants each argue the wrongful death claims against them must be dismissed because they owed no legal duty to Mr. Napper. (Docs. 65-1, 84). Under Illinois law, they assert, they had no duty to investigate, apprehend, or otherwise prevent Roever from driving while intoxicated. (*Id.*).

Defendants base their arguments entirely on *Romine v. Village of Irving*, 783 N.E.2d 1064 (Ill. App. Ct. 2003). In that case, Dixie and John Osborne dropped their five sons off at a homecoming festival, then parked their van in front of a tavern where they each consumed 12 beers. *Id.* at 1065. They then walked back to the festival. *Id.* While exiting a beer tent, John Osborne struck one of his sons. *Id.* Two officers observed the incident and confronted John, who became belligerent. *Id.* The officers handcuffed John, but released him when his son indicated he did not want to press charges. *Id.* The officers told John and Dixie to leave the area, though neither officer saw John or Dixie approach or get into a vehicle. *Id.* The couple then walked from the festival to their van at the tavern. *Id.* at 1066. Dixie drove the van and collided with the plaintiffs' vehicle, injuring the plaintiffs. *Id.*

The trial court entered summary judgment for defendants on plaintiffs' negligence claims, holding that the defendants owed no duty to the plaintiffs. The trial court found that the police were focused on John and there was no evidence they permitted Dixie to operate her vehicle while intoxicated, instructed her to drive while intoxicated, or prevented her from driving her vehicle when they knew or should have known of her intoxication. *Id.*

The Illinois Court of Appeals agreed, finding the risk to plaintiffs was unforeseeable and, thus, the defendants had no duty to the plaintiffs. *Id.* "To establish reasonable foreseeability, plaintiffs must show more than that defendant could have foreseen that the

event was possible—plaintiffs must show that the occurrence was objectively reasonable to expect." *Id.* (citing *Dunaway v. Ashland Oil, Inc.*, 526 N.E.2d 950 (Ill. App. Ct. 1988)). The court further explained that police officers have no duty to anticipate the criminal acts of third parties. *Id.* at 1067 (citing *Medley v. Turner*, 869 F.Supp. 567, 577 (N.D. Ill. 1994)). "In judging whether harm was legally foreseeable[,] we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight." *Id.* at 1066-67 (quoting *Cunis v. Brennan*, 56 Ill.2d 372, 376, 308 N.E.2d 617 (Ill. 1974)). Considering what the officers knew at the time of John's disturbance, the court found it was not reasonably foreseeable that Dixie would walk several blocks to her van, drive the van, cause an accident, and injure plaintiffs. *Id.* at 1067. The court held that the remote possibility of an accident did not give rise to a legal duty on the part of the police officers, and by extension the municipality, to plaintiffs. *Id.*

Finally, the court noted that, in determining the question of legal duty, it must consider "the magnitude of the risk involved, the burden of requiring the State to guard against the risk, and the consequences of placing such a burden on the State." *Id.* While the plaintiffs were injured by a drunk driver, the burden of protecting against plaintiffs' injuries "would be very cumbersome for police officers, who would be required to ascertain the whereabouts of each intoxicated person with whom they came into contact. Holding the municipality liable for the harmful and illegal acts of an intoxicated person who, at the time of contact with police, was not the center of police action and was not driving or approaching a vehicle while intoxicated would be an unreasonable burden on the municipality." *Id.* Accordingly, the court found no public policy dictating the imposition of a duty on the defendant municipality. *Id.*

Defendants argue this case is exactly like *Romine* because Coleman-Napper is trying to hold them responsible for the negligent or criminal acts of Roever, a third party. They contend they had no duty under Illinois law to anticipate Roever's subsequent acts, especially when she was driven away by a sober person. They claim that even if she had been arrested, Roever eventually would have left their custody in the hands of a sober person, just as she did that night.

Defendants' argument fails to resonate with the Court. Unlike the facts in *Romine*, Roever was not a third party—she was the focus of the Defendants' investigation. She was driving a vehicle when they pulled her over. She was visibly intoxicated and admitted to drinking and driving. Yes, Roever was driven away by a sober person, but *to the parking lot of another bar*, where she was allowed to go inside and consume further alcoholic beverages while maintaining access to her vehicle. Defendants not only knew this; they also allegedly facilitated it. Defendants are correct: if they would have arrested Roever, she would have left their custody in the hands of a sober person just as she did that night. But that would have been many hours later, she would not have continued to drink alcohol, and her vehicle would not have been immediately accessible to her. Under these circumstances—and considering what the Defendants knew that night—it was reasonably foreseeable to them that Roever would continue drinking, drive her vehicle while intoxicated, get into an accident, and injure someone. Thus, the Court finds that the Defendants had a legal duty to Mr. Napper.

2. *Local Governmental Employees Tort Immunity Act*

The Police Officer Defendants next argue that even if they had a duty to Mr. Napper, Plaintiff's claims are barred by the Illinois Local Governmental Tort Immunity Act, 745 ILCS

10/1-101, *et seq.* Defendants invoke multiple provisions of the Act in claiming they have absolute immunity from liability.

The Tort Immunity Act ("the Act") protects local public entities and public employees from liability arising from the operation of government. *Moore v. Green*, 848 N.E.2d 1015, 1019 (Ill. 2006) (citing 745 ILCS 10/1–101.1(a)). Under § 2-202 of the Act, public employees are immune from liability arising out of "the execution or enforcement of any law" unless such act or omission constitutes willful and wanton conduct. *Lampley v. City of Harvey*, No. 22 C 03761, 2023 WL 121747, at *2 (N.D. Ill. Jan. 6, 2023) (citing § 2-202). "Willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." § 1-210. Whether conduct is willful and wanton depends on the facts of the case but requires more than mere inadvertence or inattentiveness. *Geimer v. Chi. Park Dist.*, 272 Ill. App. 3d 629, 637 (1st Dist. 1995). "Whether conduct is willful and wanton is generally a question of fact to be resolved by a jury." *Rodriguez v. Vill. of Park Forest*, 2021 IL App (1st) 201269-U, ¶ 17, 2021 WL 3681448, at *4 (Ill. App. Ct. 2021).

Under certain circumstances, however, state actors are entitled to absolute immunity with no exception for willful or wanton conduct. As relevant here, under § 4-107 of the Act, "[n]either a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or by releasing a person in custody." § 4-107. Under § 4-102, public employees are immune from liability for the "failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." § 4-102. Further, § 4-105 immunizes public employees from liability for injuries caused by their failure to enforce any law, and § 2-204

immunizes public employees from liability for an injury caused by the act or omission of another person. §§ 4-105, 2-204. These specific immunities control over the more general immunity provided by § 2-202; therefore, a plaintiff cannot rely on § 2-202's exception for willful and wanton conduct if the more complete immunity provided by these sections is applicable. *Ries v. City of Chicago*, 950 N.E.2d 631, 640 (Ill. 2011).

The Police Officer Defendants assert these provisions provide them with absolute immunity. Specifically, they argue that Coleman-Napper's wrongful death claim is premised on their failure to arrest Roever, but § 4-107 immunizes them for liability for the failure to make an arrest, § 4-102 immunizes them for "failure to prevent the commission of crimes" (*e.g.*, Roever's further driving while intoxicated), § 4-105 immunizes them from liability for injuries caused by their failure to enforce the law, and § 2-204 immunizes them from liability for "an injury caused by the act or omission of another person" (*e.g.*, Roever's act of driving while intoxicated).

In response, Coleman-Napper argues Defendants are still liable because their specific actions are not directly covered by any provisions of the Tort Immunity Act. That is, while the Act provides governmental employees immunity based on a failure to arrest or prevent crimes, Coleman-Napper has pleaded that Defendants affirmatively assisted Roever in continuing to drink, become more intoxicated, and later drive her vehicle. Further, they communicated to Roever, explicitly or implicitly, that she could drink and drive with impunity and did not need to fear arrest or legal repercussions. Because Defendants actively encouraged Roever's behavior, she argues, their conduct is not protected by the Tort Immunity Act.

In the Amended Complaint (Doc. 55), Coleman-Napper alleges that each Police Officer Defendant:

a. failed to properly investigate Defendant Roever's intoxicated condition, including but not limited to having her undergo a field sobriety test or mechanical test to determine her blood alcohol level or state of intoxication;

b. failed to arrest Defendant Roever when he knew, or through the exercise of ordinary care should have known, that she was driving while intoxicated;

c. failed to impound Defendant Roever's vehicle or otherwise preventing her from driving in her intoxicated condition;

d. directed another bar patron to move Defendant Roever's vehicle, and thereby assisting her in continuing to drink and become further intoxicated, and to drive while intoxicated in the immediate future;

e. facilitated Defendant Roever in continuing to drink, become further intoxicated, and drive while intoxicated by allowing her to enter Good Times Saloon to continue drinking; and

f. colluded with Defendant Roever and the other Defendant Police Officers to prevent her arrest, facilitate her drinking and further intoxication and eventual drinking and driving despite Defendant Roever's intoxicated condition.

Despite Coleman-Napper's attempt to characterize her claims against the officers as purely affirmative actions that are not covered by the Tort Immunity Act, the failure to investigate whether Roever was intoxicated, the failure to arrest Roever, and the failure to impound her vehicle to prevent her from driving while intoxicated are omissions that are covered by §§ 4-102 and 4-107. These provisions provide absolute immunity for the failure to arrest Roever. *See Rodriguez v. Vill. of Park Forest*, 2021 IL App (1st) 201269-U, ¶ 22 (holding that plaintiff's claims related to the failure to arrest the defendant for DUI fell within § 4-107 rather than the more general "execution or enforcement" of the law under § 2-202).

Furthermore, under Illinois law, a plaintiff cannot avoid application of the Tort Immunity Act by "pleading around" it and framing the action using "mere semantics designed to avoid a clearly applicable immunity." *Ries*, 950 N.E.2d at 639; *Prough v. Madison Cnty.*, 984 N.E.2d 1177, 1185 (Ill. App. Ct. 2013); *see also Rodriguez*, 2021 WL 3681448, at *5. In *Ries*, the plaintiffs were injured by an escaping prisoner who crashed into their vehicle. *Ries*, 950 N.E.2d at 639. Section 4-106(b) immunizes governmental employees for injuries inflicted by an escaping prisoner, but the plaintiffs argued the provision did not cover the conduct of the officers who failed to properly restrain the prisoner and then pursued him through the streets of Chicago. *Id.* The Illinois Supreme Court was not persuaded by this argument, considering the plaintiffs were injured by an escaping prisoner and the purpose of the suit was to recover damages for those injuries. *Id.* Furthermore, the court observed, accepting the plaintiffs' argument would render the immunity a nullity. *Id.* For anytime a prisoner escaped and caused injury, the court reasoned, a plaintiff could try to hold the governmental employee liable for some failure to keep the prisoner in custody. *Id.* "Plaintiffs' injuries were inflicted by an escaping prisoner, and they cannot avoid [the immunity provided by] section 4–106(b) by arguing that their case was really about something else." *Id.*

Here, Coleman-Napper claims that Mr. Napper was killed when his vehicle was struck from behind by a vehicle driven by Roever. (Doc. 55 at ¶¶ 19-20). Coleman-Napper seeks damages as a result of her son's death, but it was Roever that caused his death. As local government employees, the Police Officer Defendants are immune from liability for any injury caused by the act or omission of another person. § 2-204. And while Coleman-Napper tries to frame her allegations as affirmative steps taken by the police officers to permit and encourage Roever to continue drinking and driving, the events that occurred that evening

were the natural consequence of the officers failing to enforce the law and arrest Roever in order to prevent the commission of further crimes. Even drawing all reasonable inferences in favor of Coleman-Napper, these allegations place Defendants squarely within the absolute immunities provided by the Tort Immunity Act. Because Defendants are immune from liability under the Illinois Local Governmental Tort Immunity Act, the Police Officer Defendants' motions to dismiss the wrongful death claims will be granted, and Coleman-Napper's claims in Counts 3, 4, 5, and 6 will be dismissed.

### C.   Section 1983 Claims (Counts 7-10)

#### 1.   *Official Capacity Claims*

In Counts 7 through 10, Coleman-Napper has sued the Police Officer Defendants under 42 U.S.C. § 1983 in both their individual and official capacities. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Official capacity suits, however, "represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* For that reason, district courts routinely dismiss claims against officers in their official capacity where the government entity is also named as a defendant because such claims are redundant. *See, e.g.*, *Cruz v. Dart*, 2012 WL 5512275, at *7 (N.D. Ill. Nov. 13, 2012).

Here, Coleman-Napper has also asserted § 1983 claims against the Police Officer Defendants' employers, the Village of Dupo and the Village of East Carondelet. Thus, her official capacity claims against the Police Officer Defendants are redundant and shall be

dismissed. The remainder of the discussion pertains to Coleman-Napper's claims against the Police Officer Defendants in their individual capacity.

2. _Due Process_

Coleman-Napper alleges the Police Officer Defendants deprived Mr. Napper of his substantive and procedural right to life in violation of the Fourteenth Amendment to the U.S. Constitution. Defendants move to dismiss these counts, arguing that no underlying constitutional right was violated; therefore, there can be no cause of action against them. Defendants argue that courts have found no duty to protect one private citizen from the wrongful or negligent acts of another private citizen.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." _Reed v. Gardner_, 986 F.2d 1122, 1124 (7th Cir. 1993). The U.S. Supreme Court held in _DeShaney v. Winnebago County Department of Social Services_, 489 U.S. 189 (1989), that the Due Process Clause is a restraint upon governmental action and does not impose upon the state a duty to protect individuals from harm by private actors. _See King ex rel. King v. E. St. Louis Sch. Dist. 189_, 496 F.3d 812, 817 (7th Cir. 2007); _see also Lampley v. City of Harvey_, No. 22 C 03761, 2023 WL 121747, at *5 (N.D. Ill. Jan. 6, 2023) (quoting _LaPorta v. City of Chicago_, 988 F.3d 978, 987 (7th Cir. 2021) ("The state does not have a due-process duty to protect against acts of private violence.")). Thus, under _DeShaney_, Coleman-Napper cannot bring a due-process claim based solely on the Police Officer Defendants' failure to arrest Roever and protect Mr. Napper from harm. _See Huber v. Beth_, No. 21-C-0969, 2023 WL 1437715, at *6 (E.D. Wis. Feb. 1, 2023) ("plaintiff could not bring a due-process claim based solely on defendants' failure to arrest [Kyle] Rittenhouse and the other armed individuals for curfew violations").

There are two exceptions to *DeShaney*'s general rule: the "custodial" exception, where the government has a duty to protect individuals in its custody, and the "state-created danger" exception. *Lampley*, 2023 WL 121747, at *5. Mr. Napper was not in the government's custody; thus, Coleman-Napper relies on the state-created danger exception. "Under the state-created danger doctrine, the Due Process Clause is implicated when '(1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question 'shocks the conscience.'" *Id.* (quoting *Est. of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019)). With regard to the first element, a plaintiff must allege that "the state did something that turned a potential danger into an actual one," rather than "just standing by and d[oing] nothing to prevent private violence." *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 599–600 (7th Cir. 2008). "In other words, the government must have taken an affirmative act that 'place[d] the plaintiff in danger or increase[d] the danger the plaintiff already face[d].'" *Lampley*, 2023 WL 121747, at *5 (quoting *Spruill v. Bd. of Educ. of City of Chicago*, 544 F. Supp. 3d 839, 845 (N.D. Ill. 2021)).

In this case, the Police Officer Defendants argue that they did not increase the danger to the public or to Mr. Napper.[1]  Thus, the state-created danger exception does not apply, and the Due Process Clause is not implicated.

In response, Coleman-Napper points to her allegations in the Amended Complaint that the Police Officer Defendants not only failed to arrest Roever, they encouraged, condoned, and affirmatively contributed to her further intoxication. She also claims that the

---

[1] Defendants do not address the second or third elements of the test.

Defendants colluded with Roever and other officers to prevent her arrest, implicitly or explicitly communicated that she would not be arrested or punished, and affirmatively created a more dangerous situation.

In support, Coleman-Napper relies on *Reed v. Gardner* to argue that police officers can be held liable under § 1983 for dangers created to a third party when they allow an intoxicated person to drive a vehicle. 986 F.2d 1122 (7th Cir. 1993). In *Reed*, the plaintiffs alleged that the defendant police officers arrested a driver, Irby, leaving the keys behind with an intoxicated passenger, Reed. *Id.* at 1124. Reed then drove off and struck the plaintiffs' vehicle, killing one person and her unborn child and severely injuring several others. *Id*. The plaintiff did not allege that Irby was drunk, so the Court of Appeals assumed, based on the pleadings, that the police officers removed a sober driver and left behind a drunk passenger with the keys, thereby creating a danger or at least rendering others on the road more vulnerable. *Id.* at 1125.

The court then explained why it mattered that the plaintiffs did not plead that Irby was drunk: "*DeShaney* and its progeny make it clear that the police have no affirmative obligation to protect citizens from drunk drivers. Taken to an extreme, police officers could watch drunk drivers stumble to their cars and drive off, weaving across the road, without incurring section 1983 liability. . . . It was the police action in removing Irby, combined with their knowledge of Rice's intoxication, which creates their liability for the subsequent accident." *Id.* The court explained, however, that if evidence was later presented at summary judgment that Irby also was intoxicated at the time of her arrest, then the officers would be entitled to judgment as a matter of law. *Id.* at 1125-26. That is because, "without state intervention, the same danger would exist. The state action did not place individuals in a position of danger that otherwise they would not have faced." *Id.* at 1125.

Coleman-Napper also relies on *Pena v. DePrisco*, a case from the Second Circuit where a number of on-duty and off-duty police officers drank alcohol together for many hours before one off-duty officer, Grey, drove drunk and killed four people. *Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005). In addressing the plaintiffs' state-created danger claim, the court noted that the plaintiffs had alleged the defendants "encouraged" Grey to drink excessively and to drive in that condition. *Id.* at 110. In fact, several of the sergeants routinely drank with officers in the precinct's parking lot as well as off-site. *Id.* at 111. Additionally, the plaintiffs alleged that the supervisory officers who did not participate in the drinking nonetheless communicated their approval by condoning the misconduct. *Id.* The court agreed that the supervisors' actions "implicitly but affirmatively condoned Grey's behavior and indicated to Grey that he would not be disciplined for his conduct" and held that when "state officials communicate to a private person that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct." *Id.*

The Seventh Circuit has not adopted the Second Circuit's holding. Instead, this Court must determine whether Coleman-Napper has plausibly alleged that the Defendant Police Officers, by their affirmative acts, created or increased a danger faced by an individual. *Sandage*, 548 F.3d at 599. The requirement of an affirmative act "must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect." *Id.* Increasing the danger means "the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Id.* at 600. To determine whether a danger has been created or increased, a court must ask:

(1) what affirmative acts did the State take, and (2) what dangers would the plaintiff have faced had the State not taken those actions. *Wallace v. Adkins*, 115 F.3d 427, 430 (7th Cir. 1997).

Here, Coleman-Napper has alleged that the Police Officer Defendants increased the danger to Mr. Napper by affirmatively communicating to Roever that she would not be arrested or punished for driving while intoxicated. They also encouraged and facilitated her further drinking by directing a sober patron to move her vehicle to the Good Times Saloon's parking lot, where they knew Roever was planning to meet friends. Had the Defendants not taken these affirmative actions, there is a chance Roever would have continued to drink and then drive her vehicle after leaving Good Times Saloon anyway. But another reasonable inference from these allegations is that Roever was emboldened by the Defendants' actions, choosing to drink more and drive drunk when she otherwise might have put down the keys.

At this juncture, it is unknown what evidence Coleman-Napper might uncover to support these allegations, and the Court acknowledges that the state-created danger doctrine is narrow and should apply only in rare and egregious circumstances. *See Wilson-Trattner v. Campbell*, 863 F.3d 589, 593 (7th Cir. 2017). Nevertheless, accepting the facts alleged in the Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Coleman-Napper has plausibly stated a § 1983 claim against the Police Officer Defendants under the state-created danger exception. Accordingly, Defendants' motions to dismiss the § 1983 claims against them are denied.

### D.     Qualified Immunity

Finally, the Police Officer Defendants contend that, even if they could potentially be found liable, they are entitled to qualified immunity. "To strike a balance between addressing constitutional injuries committed by state actors and limiting the costs of section 1983 suits,

[the Supreme Court] has held that the common-law doctrine of 'qualified immunity' applies in most cases against executive officials, including the police." *Est. of Davis v. Ortiz*, 987 F.3d 635, 638 (7th Cir. 2021). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Id.* (quoting *District of Columbia v. Wesby*, ––– U.S. ––––, 138 S. Ct. 577, 589 (2018)).

Once a defendant invokes qualified immunity in a § 1983 suit, the burden shifts to the plaintiff to demonstrate that a "(1) that a trier of fact could conclude that the officer violated a federal right, and (2) that the unlawfulness of the conduct was clearly established at the time the officer acted." *Id.* at 638-39. The unlawfulness of the challenged conduct is clearly established if there is controlling authority or "a robust consensus of cases of persuasive authority" such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 639 (citation and quotation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 8 (2015)).

Seventh Circuit precedent "make[s] clear that the motion-to-dismiss stage is rarely 'the most suitable procedural setting to determine whether an official is qualifiedly immune.'" *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (quoting *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020)). "The reason is simple: at the outset of litigation, we often cannot tell from a complaint whether qualified immunity applies." *Id.* (citation omitted). At the pleading stage, a plaintiff only has to include enough facts to state a claim that is plausible on its face and entitles them to relief. *Id.* Qualified immunity, however, is a defense that relies on the particular facts of the case. *Id.* A plaintiff need not anticipate and plead around the

defense, which is why qualified immunity is usually invoked in a motion for summary judgment. *Id.*

Here, Defendants Cleveland and Cooper argue they are entitled to qualified immunity because there was no clearly established right for Mr. Napper to have Roever arrested. Defendants Simmons and Dell argue generally that the state-created danger exception has been applied too broadly, forbidding any acts by public officials that increase private danger.

In response, Coleman-Napper argues the Police Officer Defendants violated Mr. Napper's clearly established right to life under the Fourteenth Amendment. She asserts it is clearly established through *Reed* and *Pena* that when a police officer communicates to an individual that they can drive intoxicated with impunity, they are violating the constitutional rights of a person injured by the intoxicated driver.

While *Pena*, from the Second Circuit, is only persuasive authority, *Reed* is controlling. There, and in myriad other cases, the Seventh Circuit has held that state actors may be subject to suit under § 1983 "if they knowingly and affirmatively create a dangerous situation for the public and fail to take reasonable preventative steps to diffuse that danger." *Reed*, 986 F.2d at 1127; *see also Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012) ("It is clearly established that state actors who, without justification, increase a person's risk of harm violate the Constitution."). The state-created danger exception is clearly established law, and, as discussed above, Coleman-Napper has pleaded facts sufficient at this stage to avoid dismissal of her claims against the Police Officer Defendants on the grounds of qualified immunity.

## II.   *Monell* Claims Against the Village of Dupo, Former Chief Kevin Smith, the Village of East Carondelet, and Chief Rodney Stone (Counts 11 and 12)

In Counts 11 and 12, Coleman-Napper alleges *Monell* claims against the Village of

Dupo and its former Police Chief Kevin Smith, as well as the Village of East Carondelet and its Chief Rodney Stone ("the Municipal Defendants"). Specifically, Coleman-Napper claims the Municipal Defendants: had authority to make policy for Dupo and East Carondelet and its police officers regarding the investigation of suspected drunk drivers; were aware of a pattern or practice of failing to properly enforce the law for fellow police officer suspects; and were aware that their policies were so inadequate that it was obvious a failure to correct them would result in danger to the public. Further, the Police Officer Defendants were under the control of the Municipal Defendants and were acting pursuant to the official policy, practice, or custom of those municipalities. Finally, pursuant to their official policy, practice, or custom, the Municipal Defendants intentionally, knowingly, and recklessly failed to instruct, supervise, control, and discipline the Police Officer Defendants, leading to Decedent's death and the violation of his Constitutional rights. (Doc. 55 at ¶¶ 125-30; ¶¶ 133-38).

A municipality may not be held liable under § 1983 on a respondeat superior theory. *See Monell*, 436 U.S. at 690. Instead, a plaintiff must allege that injury was caused by "(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001). "A municipality may only be held liable where it is the moving force behind the injury because some policymaker made a deliberate choice to act or not act in a certain way." *Id.* at 505.

As an initial matter, the Court notes that Smith and Stone were sued in their official capacities. As discussed above, official-capacity suits are treated as suits against the entity. Therefore, claims against officers are routinely dismissed when the governmental entity is

also sued because such claims are redundant. Because the Villages of Dupo and East Carondelet were named as Defendants, the Court dismisses the official capacity claims against Smith and Stone.

Turning to the Villages of Dupo and East Carondelet, the Municipal Defendants argue that a party bringing a claim under § 1983 must demonstrate the existence of an underlying constitutional violation, even if the policy or practice being challenged was deficient or improper. (Docs. 64, 79). Because Mr. Napper had no constitutional right in the arrest of an intoxicated driver, Coleman-Napper's claim must fail. As previously discussed, however, Coleman-Napper's lawsuit is not only based upon the failure to arrest Roever. Instead, she alleges the Police Officer Defendants affirmatively created a danger or increased the danger faced by Mr. Napper. While Coleman-Napper must later prove that allegation, it is still sufficient, at this stage, to serve as the underlying basis for a *Monell* claim.

Having found that Coleman-Napper has sufficiently stated a claim for a constitutional violation, the remainder of the Municipal Defendants' arguments fail, as they are all premised upon the lack of a properly pled constitutional violation.

### III. *Monell* Claim Against the City of Alton and Chief Marcos Pulido (Count 14)

In Count 14, Coleman-Napper asserts a *Monell* claim against Defendants City of Alton ("Alton") and Police Chief Marcos Pulido. Specifically, Coleman-Napper asserts Defendants were vested by state law with the authority to make policy for Alton and its police officers regarding their off-duty conduct, they were aware of a pattern of police officers using their position to commit crimes, including driving while intoxicated, without fear of consequences, and they knew that a failure to correct these polices, practices, or customs would result in a danger to the public, including Mr. Napper. (Doc. 55 at ¶¶ 149-50). Coleman-Napper also

claims that Roever, as an Alton Police Officer, was acting under color of state law and pursuant to official policy, practice, or custom when she used her position to conspire with the Defendant Police Officers to avoid arrest or citation, avoid seizure of her vehicle, and continue drinking alcohol. (*Id.* at ¶ 151). Alton further failed to instruct, supervise, control, and discipline Roever, and, as a direct result of Alton and Pulido's acts and omissions, Decedent's substantive and procedural right to life was violated. (*Id.* at ¶¶ 152-53).

Alton and Pulido move for dismissal of Coleman-Napper's *Monell* claim against them, relying on the fact that Roever was off duty at the time of the occurrence. (Doc. 77). Thus, they argue, Alton owed no duty to Mr. Napper for Roever's alleged conduct, and Coleman-Napper's allegations are legally insufficient to state a *Monell* claim. They also argue that punitive damages are not recoverable against a municipality.

The fact that Roever was off duty at the time of the incident is not dispositive of Alton's liability. *See Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001). To determine whether a police officer is acting under color of state law, a court must look to the nature of the specific acts performed. *Id.* In *Latuszkin*, a Chicago police officer drove drunk while off duty and killed a pedestrian. *Id.* at 503. There were no allegations that the officer acted under color of state law, he was driving his own vehicle, he was not engaged in police activity, and the plaintiff did not claim that he displayed any police power at the time of the accident. *Id.* at 506. Because the officer was "engaged entirely in private behavior at the time of the accident," the court dismissed the plaintiff's *Monell* claim against the City of Chicago. *Id.*

Here, although Roever was off duty at the time of the incident, Coleman-Napper has alleged that Roever acted under color of state law when she used her position as a police officer to avoid arrest and to continue drinking while still having access to her vehicle.

(Doc. 55 at ¶ 148). In other words, Roever used her position and power as an Alton Police Officer to obtain more favorable treatment from the Police Officer Defendants, which in turn created a danger that violated Mr. Napper's rights under the Fourteenth Amendment. Thus, Coleman-Napper has sufficiently alleged that Roever was acting under color of state law.

Moreover, Coleman-Napper has sufficiently stated a *Monell* claim. Coleman-Napper alleges that Alton and Pulido were aware that the Alton Police Department had a policy, pattern, and/or practice of assisting fellow police officers in driving while intoxicated with impunity. (Doc. 55 at ¶ 152). Furthermore, she asserts, Alton intentionally, knowingly, and recklessly failed to instruct, supervise, control, and discipline Roever; Roever was acting pursuant to this policy, pattern, or practice; and, as a result of these acts and omission by Alton and Pulido, Mr. Napper was deprived of his substantive and procedural right to life. (*Id.* at ¶ 151, 153). Thus, Coleman-Napper has sufficiently alleged a *Monell* claim against Alton and Pulido. Because "[m]unicipalities are not subject to punitive damages in suits under 42 U.S.C. § 1983," however, Coleman-Napper's claim for punitive damages in Count 14 is stricken. *See Williams v. City of Chicago*, No. 11 C 1118, 2012 WL 205908, at *5 (N.D. Ill. Jan. 24, 2012) (quoting *Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 916 (7th Cir. 2010)).

## IV. Intentional Infliction of Emotional Distress Against Village of Sauget (Count 15)

Coleman-Napper, individually, seeks to hold the Village of Sauget responsible for the tort of intentional infliction of emotional distress. She alleges that responding Sauget Police Department officers, acting under the color of the law and in the course and scope of their employment as agents, servants, and representatives of Defendant Sauget, intentionally engaged in extreme and outrageous behavior against Mr. Napper, including but not limited to failing to properly ensure Mr. Napper's body was promptly and safely moved from the

scene of the collision and causing Mr. Napper's body to remain exposed to the elements for an excessive period of time. (Doc. 55 at ¶ 157). Further, the responding Sauget Police Department officers failed to use reasonable methods to locate and notify Mr. Napper's next of kin within a reasonable period of time after the collision. (*Id.*). Coleman-Napper asserts that Sauget recklessly disregarded the probability that failing to care for and reverently handle Mr. Napper's body and to locate and notify his family within a reasonable time period would cause emotional distress to his next of kin. (*Id.* at ¶¶ 158-59). Coleman-Napper claims this outrageous behavior proximately caused Mr. Napper's next of kin to suffer severe emotional distress, including anxiety, fear, anger, sadness, and depression. (*Id.* at ¶ 160).

To state a claim for intentional infliction of emotional distress, a plaintiff must allege conduct that is truly extreme and outrageous. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016) (citing *McGrath v. Fahey*, 126 Ill.2d 78, 86, 127 Ill.Dec. 724, 533 N.E.2d 806 (Ill. 1988)). Second, a plaintiff must allege the actor either intended that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress. *Id.* Third, a plaintiff must assert the conduct in fact caused severe emotional distress. *Id.*

Whether conduct is extreme and outrageous is judged on an objective standard based on the facts of a particular case. *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012). The standard is a high one; conduct is extreme and outrageous only where it goes beyond all possible bounds of decency, such that it is regarded as atrocious and utterly intolerable in a civilized community. *Schweihs*, 77 N.E.3d at 63. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* (citations omitted). "That is, the case must be such that the recitation of the facts to an

average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Ulm v. Mem'l Med. Ctr.*, 964 N.E.2d 632, 642 (Ill. App. Ct. 2012) (cleaned up) (quoting *Reilly v. Wyeth*, 876 N.E.2d 740, 755 (Ill. 2007)).

Sauget argues the Amended Complaint fails to state a claim because, under Illinois law, the Coroner's Office has the sole responsibility to secure the bodies of deceased persons. (Doc. 85). Moreover, there are no allegations of how Coleman-Napper suffered severe emotional distress so severe that no reasonable person could be expected to endure it or that she was even aware of how Mr. Napper's body was handled at the accident scene. (*Id.*). Even if Sauget had any duty, it argues, it would be immune under the Tort Immunity Act.

The Court agrees that the Amended Complaint fails to state a claim for intentional infliction of emotional distress, as Coleman-Napper's allegations are simply too conclusory to establish extreme and outrageous conduct. She claims Sauget left Mr. Napper's body exposed to the elements for an excessive period of time, but there is no indication how long he was left at the scene of the collision. She also claims Sauget failed to notify Mr. Napper's next of kin within a reasonable time, but, again, there are no details as to how long they waited or why. Based on these allegations, the Court finds that Coleman-Napper has failed to sufficiently allege extreme and outrageous conduct. While it is true that a plaintiff need not make detailed factual allegations, she must plead "more than labels and conclusions, and a formulaic recitation of the elements" *Twombly*, 550 U.S. at 570.

In her response to Sauget's motion, Coleman-Napper argues that Sauget failed to arrange the proper removal of Mr. Napper's body with the St. Clair County Coroner's Office, thereby leaving his body in the rain to suffer decay for more than four hours. (Doc. 98). She also argues Sauget and its agents failed to notify Mr. Napper's next of kin even though he

was in possession of a driver's license with an address. (*Id.*). Instead of contacting family members at that address, an employee of the funeral home used social media to notify a non-immediate family member nine hours after Mr. Napper's death. (*Id.*). Because the funeral home did not have much information about the circumstances of Mr. Napper's death, Coleman-Napper was left with unanswered questions, causing significant emotional distress. (*Id.*). In fact, Sauget officers did not contact Coleman-Napper until the following day, more than 24 hours after Mr. Napper was killed. (*Id.*). Without determining whether this information would establish extreme and outrageous conduct, however, the Court notes that none of these details are found in the Amended Complaint.

Because the Court finds that Coleman-Napper has failed to state a claim for intentional infliction of emotional distress, the Court need not determine whether Sauget is immune from suit under the Tort Immunity Act. Coleman-Napper's claim against the Village of Sauget shall be dismissed without prejudice.

## Conclusion

For these reasons, the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendants Cameron Cleveland and Jason Cooper (Doc. 65) is **GRANTED in part and DENIED in part**. The wrongful death claims in Counts 3 and 4, and the official capacity claims in Counts 7 and 8 are **DISMISSED without prejudice**. Plaintiff shall proceed on her individual capacity claims in Counts 7 and 8 against Cameron Cleveland and Jason Cooper.

The Motion to Dismiss for Failure to State a Claim filed by Defendants Bryce Dell and Jerame Simmons (Doc. 83) is **GRANTED in part and DENIED in part**. The wrongful death claims in Counts 6 and 7 and the and official capacity claims in Counts 9 and 10 are **DISMISSED without prejudice**. Plaintiff shall proceed on her individual capacity claims in

Counts 9 and 10 against Bryce Dell and Jerame Simmons.

The Motion to Dismiss for Failure to State a Claim filed by Defendant Village of Dupo, Illinois (Doc. 63) is **DENIED**, but the official capacity claim against Defendant Kevin Smith is **DISMISSED without prejudice.** Plaintiff shall proceed on her claim in Count 11 against the Village of Dupo.

The Motion to Dismiss for Failure to State a Claim filed by Defendant Village of East Carondelet, Illinois (Doc. 78) is **DENIED**. The Motion to Dismiss for Failure to State a Claim filed by Defendant Rodney Stone (Doc. 80) is **GRANTED**, and the official capacity claim against him is **DISMISSED without prejudice.** Plaintiff shall proceed on her claim in Count 12 against the Village of East Carondelet.

The Motion to Dismiss for Failure to State a Claim filed by the City of Alton, Illinois, and Marcos Pulido (Doc. 77) is **DENIED**, but Plaintiff's claim for punitive damages against the City of Alton is **STRICKEN**. Plaintiff shall proceed on her claim in Count 14 against the City of Alton, Illinois, and Marcos Pulido.

The Motion to Dismiss for Failure to State a Claim filed by Defendant Village of Sauget, Illinois (Doc. 85) is **GRANTED**, and Plaintiff's claim for intentional infliction of emotional distress in Count 15 is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

**DATED:   February 3, 2023**

_Nancy J. Rosenstengel_

**_____**
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**